J. W. McWILLIAMS COMPANY, a corporation, *Appellant*, vs. FORT MYERS DEVELOPMENT CORPORATION, a corporation, and IRVING WALKER, *Appellees*.

140 So. 902.

En Banc.

Opinion filed April 16, 1932.

Petition for rehearing denied May 25, 1932.

*Treadwell & Treadwell* and *J. Bowers Campbell*, for Appellant;

*L'Engle & Shands*, for Appellees.

ELLIS, J.—J. W. McWilliams Company, a corporation, owned in 1925 a large tract of land in Lee County containing about twenty-three thousand six hundred and fifty-two acres which it contracted to sell to Irving Walker at the price of seventy-five dollars per acre but at Walker's request entered into a contract with him in which the price was stated to be ninety dollars per acre and by letter addressed to him dated New York, June 12, 1925, agreed in consideration of Walker "handling the tract of land" to accept his two checks aggregating three hundred and fifty-four thousand seven hundred and eighty-four dollars and five cents and return the same to him upon the payment of the installments due respectively sixty days and four months on the purchase of the

lands. The two checks for the amount stated represented the difference between seventy-five dollars per acre, at which the land was actually sold, and the fictitious price of ninety dollars stated to be the price in the contract.

Walker's purpose was to interest others in the transaction by representing to them that he had purchased the land at ninety dollars per acre and was himself paying on the purchase price three hundred and fifty-four thousand seven hundred and eighty-four dollars. This purpose was disclosed to McWilliams Company which, when Walker had succeeded in interesting others who formed a company to take over the land and the first payment was made, gave Walker a receipt for one hundred and seventy-four thousand one hundred and thirty-two dollars although he had neither paid that sum nor given his check therefor and later he received his note for one hundred and eighty thousand six hundred and fifty-one dollars and ninty-nine cents from the McWilliams Company although it was not paid.

When Walker having interested certain persons in the purchase of the land who organized a corporation named the Fort Myers Development Corporation with himself as president to take over the purchase, the McWilliams Company received from the Fort Myers Development Corporation notes aggregating the sum of $1,697,829.44 which is $76,090.81 less than the price of the land at seventy-five dollars per acre and less by the sum of $430,874.86 than the cost of the land at ninety dollars per acre and accepted a mortgage from The Fort Myers Development Corporation upon the lands to secure the payment of the notes.

Out of that transaction grew the litigation which is here on appeal from the Chancellor's decree holding that the Fort Myers Development Corporation is entitled to rescind its purchase of the lands from J. W. Mc-

Williams Company and to demand of that corporation the return of the money paid and interest upon it.

The J. W. McWilliams Company exhibited its bill in chancery in the Circuit Court for Lee County to enforce the mortgage lien against Fort Myers Development Corporation in July, 1926. The defendant answered that Walker's dealings with it and his transactions with the complainant constituted a fraud upon the defendant to which the complainant was a party, not only because the complainant, vendor, had given Walker, its vendee, a contract reciting a false consideration for the purpose of enabling him to defraud his principal and associates by securing to himself a large profit at their expense in the fiduciary capacity in which he acted with and toward them, but that the complainant with a knowledge of the facts aided and abetted Walker in the execution of the scheme.

The answer setting up that defense and seeking the affirmative relief of rescission and restitution of the money paid was held by this Court in a former appeal to be a good answer and counterclaim. See Ft. Myers Development Corporation v. J. W. McWilliams Company, 97 Fla. 788, 122 South. Rep. 264.

In a very carefully considered opinion by Circuit Judge West, who sat in place of Mr. Justice Buford, who was disqualified, it was stated, speaking from the averments of the answer, that ''Walker was first the promoter, and after its organization as a corporation, president of the defendant. Therefore, in all the dealings between him and the defendant relating to the subject-matter of this controversy, the utmost good faith was exacted, and, if complainant conspired with and corrupted Walker and aided and abetted him in a breach of his fiduciary duty to defendant, and his double dealing, in which complainant concurred, so operated upon defendant as to induce it to incur obligations that it would not

otherwise have assumed, complainant is not in position to urge actual fraud or resulting pecuniary injury as a prerequisite to defendant's right to rescind.''

The above cited case contains a full statement of the averments of the answer showing in what manner the defendant claims that it was induced by the fraud of Walker, aided by the complainant, to incur obligations which it would not have otherwise assumed. The judgment of the court in that case is the law of the case so far as the sufficiency of the answer is involved. See First Nat. Bank of St. Petersburg v. Ulmer, 66 Fla. 68, 63 South Rep. 145; Peacock v. Our Home Life Ins. Co., 73 Fla. 1207, 75 South. Rep. 799; Tampa Water Works Co. vs. Wood, decided at the present term.

The case was referred to a special master to take and report the evidence and his report was filed on the 25th day of February, 1929, about three months before the decision of this Court on the sufficiency of the answer was rendered and four months before the mandate was sent to the clerk.

The final decree was rendered on December 11, 1929. The chancellor held that the equities in the case were with the Fort Myers Development Corporation; that it had proved the material averments of its answer and was entitled to a rescission of the contract of purchase of the land, cancellation of the mortgage and restitution of the money paid to the complainant. A pro confesso decree had been taken against Walker, who was made a cross defendant by Fort Myers Development Corporation in its answer and counterclaim. The decree ordered the payment by J. W. McWilliams Company to Ft. Myers Development Corporation of the sum of $451,443.87, which was several thousand more than the answer averred had been actually paid to the complainant with interest and in default thereof that the lands should be sold and the proceeds of the sale be applied to the ex-

tinguishment of the defendant's lien and that the stock certificates held by Walker of the stock in Fort Myers Development Corporation be surrendered by him for cancellation.

J. W. McWilliams Company appealed from the decree. In the caption of the notice of appeal Walker, who was brought into the case by the answer of Ft. Myers Development Corporation as defendant, was named as an appellee.

No question is raised as to the sufficiency of the notice of appeal on the ground that it names no one in the body of the notice as appellees and its sufficiency is questionable as to the designation of the cause by "its usual title in the inferior court". See Chapter 11890 Laws 1927; Smith v. Fidelity Trust Co., 96 Fla. 168, 117 South. Rep. 791.

So the point is not considered although the jurisdiction of this court may depend upon the use of the plural word "defendants" in the body of the notice, the names of Walker and the Development Corporation appearing in the caption.

The record does not disclose that Walker was ever served with subpoena; nor that he appeared in the cause nor that substituted service of process against him was obtained by publication. The only reference to him in that connection is the recital in the final decree that "a decree pro confesso has been duly entered herein against the cross-defendant Irving Walker".

Walker's interests were very materially affected by the decree in that the certificates of stock held by him in the Ft. Myers Development Corporation were required to be surrendered by him and cancelled as a result of the fraud which the chancellor held he perpetrated with complainant's participation and active assistance upon the defendant and counter-claimant Ft. Myers Development Corporation. If Walker perpetrated no fraud,

it follows that complainant perpetrated none. It seems that the answer of the principal defendant rests upon the theory of a conspiracy between Walker and McWilliams Company to perpetrate a fraud upon the defendant Ft. Myers Development Corporation. Upon the existence of such conspiracy the relief which the Ft. Myers Development Corporation sought and obtained against Walker as well as against the McWilliams Company depends.

It is essential therefore that Walker should be a party to this appeal either as appellant or as appellee with summons and severance and his connection with the case shown by service of process or voluntary appearance. Otherwise to affirm the decree would appear to affect the interests of a person not a party to the litigation in any phase of it. The point however as stated is not made and we pass it with some reluctance because of the uncertainty which both the transcript and the notice of appeal creates as to the jurisdiction of Walker by both the trial court and this court.

The case was tried on the issues presented by the answer. While it is reasonably clear from the evidence that Walker purchased the land at seventy-five dollars per acre and induced the vendor to enter into a contract reciting a price of ninety dollars per acre with an understanding that the excess fifteen dollars per acre would be remitted to him upon a resale of the land and that Walker did not disclose to his vendees, whom he afterwards interested in the transaction, the existence of the secret understanding with the vendor, it is not clear that the complainant had any knowledge of Walker's plans further than his purpose to resell the property at ninety dollars per acre to other persons who would assume his contract with the vendor at that price and in that manner secure to himself the profits which he expected to

realize by a development of the land and resale of it in smaller tracts at a still larger price.

If Walker in his transaction with the McWilliams Company was acting as the agent of Mr. Pulbermacher and others who afterwards formed the Ft. Myers Development Corporation to purchase the land, or if Walker as the promoter of the corporate enterprise represented that he had agreed to pay in money ninety dollars per acre for the land when in truth he had only agreed to pay seventy-five dollars per acre his conduct would constitute a legal fraud upon his associates, because in such case he would have owed to his associates the good faith that would have required a disclosure of the fact that the land had been purchased by him at seventy-five dollars per acre. See Ft. Myers Devlopment Corp. v. J. W. McWilliams Co., *supra;* 14 C. J. 286.

But the fact remains that the contract for the purchase of the land which the corporation seeks to rescind and the mortgage executed by it which it seeks to cancel were made in its corporate capacity after its organization and were such contracts which under its charter it had the power to make. Just how far and to what extent the vendor's agreement privately made with Walker to rebate to him twenty per cent of the contract price at which the corporation was purchasing the land could affect the bona fides of the transaction between the corporation and the vendors is not made clear by the evidence in the case.

It is not sufficient to say that the corporation would not have purchased the land at ninety dollars per acre if it had known through its officers that Walker was obtaining a rebate of twenty per cent of the price from the vendor. Non constat but that it would have purchased at seventy-five dollars per acre and as it does not appear that it has paid more than that sum and can and has obtained full restitution from Walker of the excess

fifteen dollars per acre it is difficult to perceive how the vendor contributed fraudulently in anywise to the contract actually made between it and the corporation.

There was no fiduciary relation shown by the evidence to exist between the complainant vendor and the Ft. Myers Development Corporation nor did the vendor receive from the corporation more than seventy-five dollars per acre for the land nor by the contract was it to receive more. In entering into the contract with the vendor the corporation as a separate and distinct entity was in possession of the information possessed by its president. If that president practiced a fraud upon his associates in not disclosing that the vendor was allowing him a rebate of twenty per cent from the contract price of which the corporation could and has obtained the benefit by compelling Walker to disgorge, no damage has resulted to the corporation.

In this case, however, it is not clear that the vendees of Walker, who afterwards formed the corporation, were entitled to claim the benefit of the bargain which Walker had made with the vendor for the land. The evidence tends more strongly to establish the fact that Walker interested Pulvermacher and others in the purchase of the land and they afterwards through the advice and counsel of Finkelstein organized the Ft. Myers Development Corporation to purchase the land from Walker, who accepted stock in the corporation for the amount of money he had actually invested and the twenty per cent margin which he had in his contract with the vendor.

Under these circumstances it is straining at superficial moral sentiment to say that Walker owed to Pulvermacher and his associates the duty of disclosing to them that the land cost him only seventy-five dollars per acre or that he held a contract for its purchase at that price.

It was the land which Pulvermacher and his associates

were buying at ninety dollars per acre and not Walker's interest in a contract for its purchase at seventy-five dollars per acre. They, by contract with Walker took over his contract for the purchase of the land at ninety dollars per acre and for the margin which Walker. held unknown to them Walker was to accept stock in the new corporation.

The reasoning which leads to the conclusion that Walker perpetrated a fraud upon Pulvermacher and his associates in that transaction rests upon the assumption that a fiduciary relation existed between him and them when he sold to them his rights under the contract at ninety dollars per acre for the land, and that he was undoubtedly the promoter of the corporate enterprise to take over the contract on that basis.

Pulvermacher and his associates were satisfied to purchase the land at that price and formed a corporation to take over the Walker contract. The lure of a great profit to be found in the development of the property moved them to go on with the enterprise in which Walker agreed to share. The corporation which was formed, or the persons who organized it, before its formation could have ascertained by the .exercise of reasonable diligence the exact terms of the contract between the vendor and Walker, but because he concealed from them the fact that he was earning a paper profit of fifteen dollars per acre they now say that he committed a fraud upon them and that the complainant also constructively, if not actually, participated in that fraud because it at Walker's suggestion wrote into the contract the price of ninety dollars per acre and agreed to return to him fifteen dollars per acre if he should succeed in selling his contract at the greater price per acre. What actually occurred was: The vendor accepted Walker's promise to pay fifteen dollars per acre on the contract which Walker's vendees, then unknown to complainant, might make with it, Walker's

vendees to satisfy Walker by some arrangement they might make with him, which arrangement afterward took the form of stock certificates to Walker in the corporation to be organized.

There is a wide gap between that situation and the averments in the answer upon which Ft. Myers Development Corporation seeks a rescission of the contract and cancellation of the mortgage, that complainant entered into a fraudulent undertaking or conspiracy with Walker to enable him to defraud a corporation to be thereafter promoted by him to take over the land. There is no substantial evidence in this record to support such averments of the answer.

It is useless to discuss the conditions existing in this State during the early months and first part of the latter half of the year 1925 when there appeared to be no reasonable limitation upon the possibilities of real estate development in Florida. It is sufficient to say that at the date of the contract between complainant and Walker, June 12, 1925, ninety dollars per acre as a price for the land involved seems not to have been, so far as the evidence discloses, a large price but on the contrary a very small price, in which situation the defendant corporation and the persons forming it might have found justification for their failure to inform themselves of the details of the transaction between complainant and Walker, if indeed in the circumstances they were legally or equitably entitled to be so informed.

It is averred in the answer and the evidence discloses the fact to be that the corporation defendant has not agreed and is not therefore obligated to pay McWilliams Company more than seventy-five dollars per acre for the land. While certificates of stock were issued to Walker for his alleged payment of $354,784.05 upon the price of the land the corporation is not harmfully affected by such

issue because it stands cancelled by the decree, as according to Walker's admissions the certificates were wrongfully issued to him.

There is much in the answer about a bribing by the vendor of the agent of the defendant corporation, or the agent of the persons who afterwards formed the corporation, and many averments of fraud practiced by the vendor upon Pulvermacher and his associates and a concealing by the vendor of the real price which Walker was to have paid for the land, but in the circumstances in which the vendor sold the land to Walker, as disclosed by the evidence, we are unable to perceive any element of fraud.

The details of the trade, reduced to the last analysis, were in substance as follows: The vendor knew Walker as a prospective purchaser of the land seeking to resell it at an advanced price over that which he agreed to pay the vendor. The latter agreed to name in its contract the price at which the purchaser Walker hoped to sell and promised that in the event of such sale and a satisfactory payment in cash to credit upon the deferred payments a sum equivalent to the difference between the price at which the vendor sold to Walker and the price named in the contract.

Afterwards Walker sold the land to purchasers whom he found, and whom at the time of the contract were unknown to the vendor, at and for the price named in his vendor's contract. Walker's vendees afterwards organized the corporation, took over Walker's contract, reduced by the margin of paper profit which he made, and issued certificates of stock in the corporation to pay him therefor. According to the evidence, they afterwards persuaded Walker to admit that because of prior relations of a friendly character between him and Pulvermacher his action in concealing from the latter the price Walker

agreed to pay for the land was a fraud on Pulvermacher. But Walker's admission that he had defrauded Pulvermacher did not stamp the vendor's conduct with that quality, nor indeed did such an admission by Walker stamp his conduct toward Pulvermacher with such legal fraud as to vitiate his trade with the latter.

There is much evidence from which it may be inferred that Mr. Pulvermacher, Finkelstein and others who formed the corporation knew that Walker had a profit in the transaction. Their suspicions were at least aroused, but in view of the possibilities which seemed clear for a great profit to themselves the price of ninety dollars per acre was a mere ''bagatelle''.

There is also much evidence from which it may be inferred that the defendant corporation's keenly developed sense of fiducial good faith, which it avers was wanting in Walker, was awakened only after, or at about the time, a deflation in real estate values settled upon the exaggerated hopes of the speculators.

We think that the evidence was insufficient to establish any connection of the complainant of a fraudulent or deceptive character with the defendant corporation or any of its promoters and in the contract with Walker there is nothing of a fraudulent, crafty, deceitful character that would vitiate it or which could be utilized afterwards as a spur to awaken a dormant conception of the golden rule in a trade.

The evidence in the case does not support the averments of the answer in the view which we have of it and the decree of the chancellor is therefore reversed.

WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

BUFORD, C.J., disqualified.