PALM BEACH ESTATES, a Corporation, and J. B. MCDONALD, *Appellants*, vs. BULA E. CROKER, *Appellee.*

143 So. 792.

Division B.

Opinion filed August 31, 1932.

Petition for rehearing denied October 25, 1932.

618

*Fleming, Hamilton, Diver & Lichliter; Blackwell, Donnell & Moore* and *Loftin, Stokes & Calkins,* for Appellants;

*Fancher, Paty & Warwick, R. E. Robinson* and *George M. Powell,* for Appellee.

DAVIS, J.—This case is for the second time before this Court on an appeal and a cross appeal from a final decree of the Circuit Court of Palm Beach County rendered as to issues heretofore considered by this Court in passing upon the pleadings.

After the previous opinion and decision were handed down by us in this suit (Croker v. Palm Beach Estates, 94 Fla. 171, 114 Sou. Rep. 225) the case was remanded to the Court below where further proceedings were had pursuant to the mandate. Voluminous testimony was taken;* and a final decree rendered in favor of the cross-complainant in the court below. Both parties are dissatisfied with that decree and both have appealed from it and assigned error with regard to it.

The questions arising now are largely of facts which are complex, of the legal effect and weight of evidence about which there is a dispute, and concerning conclusions of the Chancellor arrived at by him in deciding several sharp

---

*The transcript of the record brought here on this appeal embraces 15 Volumes aggregating 5,702 pages of pleadings and testimony. The briefs consist of printed and typewritten documents aggregating more than a thousand pages, all of which have been painstakingly studied by the members of this Court subsequent to the oral argument before Division B, which was had on December 11, 1931. There are seventeen assignments of error and sixty-one cross assignments of error. One of the cross assignments of error filed embraces 490 pages and covers several hundred objections to admission of evidence.

conflicts in the evidence which largely influenced, if they did not control, the ultimate decision of the whole controversy.

The law of the case as made by the pleadings, was settled by this Court when it was here before. See J. W. McWilliams Co. v. Fort Myers Development Corp., 140 Sou. Rep. 902, opinion filed April 16, 1932, decided here at the last term. For a proper disposition of the present appeal, the issues as presented by such pleadings are sufficiently stated in the opinion heretofore filed in this case on the former appeal. It is therefore unnecessary for us to repeat them now. For the previous opinion (per Ellis, J.), see Croker v. Palm Beach Estates, 94 Fla. 171, 114 Sou. Rep. 225.

The questions of law heretofore considered and decided by this Court on the first appeal herein being no longer open for discussion or consideration, all assignments of error on this appeal advanced by either of the parties in an effort to re-open the propositions of law heretofore adjudicated, must be eliminated from reconsideration in this opinion. See Commercial Bank v. First Natl. Bank, 80 Fla. 685, 87 Sou. Rep. 315; First Natl. Bank of St. Petersburg v. Ulmer, 66 Fla. 68, 63 Sou. Rep. 145; Peacock v. Our Home Life Ins. Co., 73 Fla. 1027, 75 Sou. Rep. 799; Tampa Water Works Co. v. Wood, decided at the last term.

The original bill of complaint was filed by Bula E. Croker against J. B. McDonald and Palm Beach Estates seeking to cancel a land contract. The contract sought to be cancelled is fully described in the previous opinion of the Court hereinabove referred to. The defendants in that suit resisted the cancellation asked for, and filed a counterclaim seeking specific performance of the contract thus sought to be cancelled. The decisions of the present appeal now largely turns upon the Chancellor's findings

on the issues presented by the counterclaim, because the Chancellor found the equities against the original complainant and in favor of the counterclaimant, and entered his final decree according to that finding.

Before the taking of testimony began, complainant in the Court below, Mrs. Bula Croker, sought leave of the Court to file a fifth amended bill of complaint. At that time the theory of complainant's case, as presented by her pending pleadings, had been under review of, and decided by, this Court on the previous appeal. The object of the proposed fifth amended bill of complaint was to present by way of another amended bill in equity a new and different equitable basis for relief, materially and distinctly different from that previously asserted by Mrs. Croker.

The Chancellor denied the motion to file the fifth amended bill, stating in his order, "In view of the decision of the Supreme Court in this case, and upon authority of Guggenheimer & Co. v. Davidson, 62 Fla. 490, 56 Sou. Rep. 801, I am of the opinion that the proposed amended bill is neither timely nor proper at this state of the case, and that it would not be within my judicial discretion to permit it to be filed."

Our view is that no reversible error was committed by the Chancellor in so ruling.

The first bill of complaint had been filed December 8, 1923. The fourth amended bill had been filed January 28, 1925. Thereafter the last amended bill had been answered and a counterclaim interposed to it. The counterclaim was attacked by exceptions. To an order overruling such exceptions the previous appeal had been taken by complainant who felt aggrieved at that ruling. Before taking an appeal complainant was in duty bound to perfect her own pleadings before appealing from the order on her own exceptions to an answer and counterclaim filed in response to her last amended bill. This is

so because the purpose of the interlocutory appeal taken was to fix the law of the case in relation to the fourth amended bill and the answer and counterclaim filed thereto.

Having been brought into the appellate court as an appellee, defendant interposing the answer and counterclaim was entitled to the benefit of the Supreme Court's holding that the answer and counterclaim were sufficient in law in the particulars argued and considered by the appellate court. It was therefore beyond the province of the Chancellor to permit appellee to be deprived of such benefit through the filing of an amended bill which was designed to re-open and re-argue the whole controversy and which would have laid the basis for another appeal concerning in part at least, the same matters which this Court had already decided.

When a party appeals from an order of the Circuit Court in a Chancery cause, and such order on appeal is affirmed by the appellate court, and the cause remanded for further proceedings consistent with the appellate court's opinion, the lower court has no authority to re-open the case, or to permit amendments to be made inconsistent with the state of the record upon which the appeal was decided, unless authority to do so be expressly or impliedly given by the appellate court. Bloxham v. F. C. & P. R. R. Co., 39 Fla. 243, 22 Sou. Rep. 697.

Even in cases in which no appeal at all has been taken, an amended bill of complaint which is in effect the institution of a new and materially different suit alleging a different cause of action, which is wholly inconsistent with, and repugnant to, the allegations of the original bill and attempts to assert an entirely different and inconsistent right in the complainant, has been held by this Court to be improper and subject to a motion to strike. See Guggenheimer & Co. v. Davidson, 62 Fla. 490, 56 Sou. Rep. 801.

The object of our statute in permitting interlocutory appeals in chancery cases is to expedite the administration of justice by providing a means by which propositions of law involved in the procedural steps of an equity suit may be finally and authoritatively settled by an appellate court and become the law of the case with reference to subsequent proceedings. The statute permits but does not require the taking of an interlocutory appeal. Sections 4961 C. G. L., 3169 R. G. S. But when such an appeal has been taken, appellant who has elected to pursue it, is bound not only as to the law points decided but by the state of the record upon which he has assumed to seek appellate review. This is certainly true with respect to his own pleadings when he has had full opportunity to amend and perfect them before appealing from an interlocutory order made with reference thereto.

An interlocutory appeal in equity in this State is but a step in the cause.* Robinowitz v. Houk, 100 Fla. 41, 129 Sou. Rep. 501; Section 4635 C. G. L., Chapter 11890 Acts of 1927. And upon any appeal, whether interlocutory or final, this Court has authority to enter its own decree here disposing of the matter brought before it for review. McLin v. Florida Automobile Owners Assoc., 105 Fla. 169, 141 Sou. Rep. 147; Anderson v. Board of Public Instruction, 102 Fla. 695, 136 Sou. Rep. 334.

The effect therefore of a decree of this Court simply affirming an interlocutory order of the Circuit Court in a Chancery cause, is to approve that order in the form in which it was entered in the court below, and thereby to conclusively fix the status of that order as a final adjudication of those propositions of law embraced in or comprehended by it so far as such propositions of law have been discussed and decided on the appeal. Such an ad-

---

*It is also substantially a rehearing by the appellate court of the order appealed from. Southern Life Ins. & Tr. Co. v. Cole, 4 Fla. 359.

judication necessarily precludes a change or amendment of the record in the lower court which would defeat in whole or in part the effect of the appellate court's decision after the mandate of this Court is sent down.[*]

The same principle which forbids the Circuit Court from defeating our appellate jurisdiction, by permitting a dismissal of a bill of complaint while an appeal predicated on its alleged insufficiency is pending undisposed of (Willey v. W. J. Hodgson Corp., 89 Fla. 446, 105 Sou. Rep. 126), precludes the defeat, indirectly, of what has already been decided by an actual decision of this Court. Such circumvention cannot be accomplished after remand of the cause by permitting an amendment of the record indirectly having the effect of avoiding what has been decided, after our mandate has been sent down, unless permission to amend was given by the appellate court, or such permission to that effect is necessarily implied from the appellate decision announced.

The evidence shows that on July 12, 1920, Bula E. Croker and her husband, Richard Croker, were preparing to leave America for Ireland, where they owned a home. Mr. and Mrs. Croker had recently been involved in litigation in the court of Palm Beach County, as well as in New York State, concerning the right of Mr. Croker to manage his property and affairs. For several weeks they had planned to turn their Palm Beach real estate over to some one to sell for them in their absence. It also appears that another purpose they had in mind was to put the property beyond the reach of the Croker children,

---

[*] What this Court recently said in Webb Furniture Co., Inc. v. Everett, 141 Sou. Rep. 115, opinion filed April 20, 1932, as to the right and duty of the lower court to permit amendments to plaintiff's pleadings in a common law case after reversal and remand for a new trial, is not applicable to a situation such as is presented here. Remand for a new trial places a case back where it was before any trial was ever had. The trial judge consequently has power to deal with it on such new trial in any way not inconsistent with the law of the case as declared by the appellate court's opinion on the remand.

who had resorted to an injunction against Mr. Croker to prevent his disposing of it, but the injunction had been dissolved.

J. B. McDonald, the appellant, was an experienced real estate man in Palm Beach. The Crokers had been directed to him as a realtor capable of handling their properties. They discussed their plans with him and waited for a week or two before undertaking any definite action. Finally duplicate copies of a written agreement (subsequently dated July 12, 1920) and two deeds were drafted. These were later executed July 12, 1920, in the office of a Dr. Jackson.

By this contract the Crokers made McDonald their selling agent to handle the lands for sale for a term of five years from July 12, 1920, at a price at not less than $150.00 per front foot, payable at least one-fourth cash and the balance in one, two and three years. Taxes were to be taken care of by reimbursement to the Crokers of the proportionate amount of taxes paid by him up to the date of sale.

The title to the property had, simultaneously with the making of the contract of July 12, 1920, been conveyed to McDonald by deed. On October 23, 1920, McDonald conveyed the property to a selling corporation, Palm Beach Estates, and at the same time assigned the contract to said Palm Beach Estates.

Richard Croker died on April 29, 1922. His wife, Bula E. Croker, thereupon became the sole owner of the lands involved.

Shortly afterwards Mrs. Croker notified McDonald that she considered, and would treat, the contract of July 12, 1920, as null and void. Acting on that notification, on December 8, 1923, she filed her bill in equity seeking to cancel the contract and the deeds between the Crokers and McDonald. At the same time, a notice of *lis pendens* was

filed by her, which prevented further disposition of the property by appellants pending the determination of the suit.

When the appellants filed their answer and counterclaim to the fourth amended bill of complaint, they denied therein all the material allegations of the bill. They further sought thereby to exercise under the contract their option to purchase the property. Pursuant to such exercise of their option to purchase, appellants unconditionally paid into the registry of the Circuit Court at the time of filing their counterclaim the sum of $529,466.00 and the clerk's fees for keeping and disbursing same. This sum of $529,466.00 was afterwards deposited by the Clerk of the Circuit Court in the Farmers Bank & Trust Company, of West Palm Beach, in the trust department of the bank, subject to the Clerk's check. Subsequently the depository bank became insolvent, and as a result of this happening, about $217,000.00 of the $529,466.00 deposit was lost.

At the same time appellants filed their amended answer and counterclaim, and simultaneously with the tender in court of the $529,466.00 appellants also unconditionally delivered into the registry of the Court five promissory notes. These notes were each dated October 15, 1924, and each was made out for the sum of $211,786.40. By their terms, these notes severally were drawn to become due on October 15, 1925, 1926, 1927, 1928, and 1929, respectively. The notes and mortgage thus executed and made payable according to the terms of the option contract, were still in the registry of the Circuit Court at the time of the rendition of the final decree.

The final decree was entered Auguts 21, 1929. This was about sixty days before the maturity of the fifth note which fell due October 15, 1929. During the whole period of time from October 15, 1924, until August 21, 1929, the litigation had gone on between appellants and appellee

in an endeavor to settle the questions in controversy. And likewise during this time the appellee, Bula E. Croker, had persisted in her refusal to accept the $529,466.00 deposit, as well as the five notes above referred to, and continued to deny appellants' claim to a conveyance of the title as provided in the option.

In resolving the equities in favor of the appellants and holding that Mrs. Croker should be required to make a conveyance of the land pursuant to the appellants' exercise of their option to purchase, the Chancellor held that appellants should pay to Mrs. Croker the full sum of $529,466.00 already tendered into court, without deduction therefrom for the loss of the $217,000.00 of the deposit occasioned by the insolvency of the depository. The Chancellor further decreed that the appellants should also pay all the matured notes which had been tendered pursuant to the option contract under date of October 15, 1924, together with all required interest payments specified therein, without deduction for time out due to the appellee's refusal to recognize the option or to accept said notes. The decree further required the appellants to pay certain specified taxes on the real estate involved, which had accrued on the lands after the date of the exercise of the option by appellants.

The terms of the final decree are complained of by the appellants, because the Court required them to pay to the appellee the notes in the form according to which they were tendered, as well as the undiminished amount of the initial deposit which was also tendered into court and partially lost through failure of the depository. The requirement for the payment of the taxes ordered is similarly questioned. The appellee, Bula E. Croker, by her cross assignments of error, broadly challenges the correctness of any decree at all in any form in favor of the appellants.

We shall first refer to the propositions of law which we deem to have been conclusively settled by us on the first appeal.

These propositions are: *first*, that the instruments executed July 12, 1920, create a "private, discretionary active trust" with J. B. McDonald as Trustee; *second*, that the option to purchase contained in the contract "is enforceable, even if the agreement should be held to be not under seal, because that formality of the statute was fully observed by the execution of the deeds of conveyance whereby the legal title became vested in McDonald;" *third*, that McDonald "could purchase all or any portion of the lands unsold by paying the price agreed and complying with the terms of the agreement;" *fourth*, that McDonald's "right to purchase did not depend upon his having first made a sale of any portion of the land" as it was contemplated he was empowered to do had his option to purchase not been exercised.

The allegations of Mrs. Croker's amended reply to the appellant's answer and counterclaim raised in substance the contention that the execution of the contracts and deeds had been procured by fraud; that Mrs. Croker's acknowledgment thereto had not been taken by the notary public upon a separate and private examination of her made apart from her husband, as required by law, at the time the papers were executed, and that appellants were barred from specific performance because of undertaking to come into equity "without clean hands."

We shall first consider the sufficiency of the evidence to support the Chancellor's decree, because if that question be decided in favor of the appellee, no other questions would be required to be considered. In announcing his decree, the Chancellor made certain findings of law and fact which he incorporated therein. Such findings were as follows: (1) That on July 12, 1920, there was a

fiduciary relationship existing between McDonald and the Crokers; (2) that McDonald exercised no undue influence over the Crokers and had been guilty of no fraud; (3) that the Crokers had every opportunity for independent advice in that they had had the contract in the hands of their attorney before its execution and had had their attorney present at the time of its execution; (4) that the consideration for the contract was adequate in that it had been entered into for the mutual advantage to all parties and had enabled the Crokers to carry out their desires to be free from the cares of property management, as well as receive a considerable profit on their investment through the sale thereof; (5) that it enabled McDonald, and by assignment the Palm Beach Estates, to devote their time and money in an endeavor to sell the land, and also to receive a considerable profit; (6) that the fact that McDonald could purchase under the contract on terms more favorable than he was authorized to sell to others did not vitiate the contract, because it was reasonable to assume that the Crokers realized that if McDonald and Palm Beach Estates spent their time and money in an effort to sell the property (as they did) without success, then some concession might properly be made in order to effect a sale to some one; (7) that the fact that after a period of years it was made to appear that a greater profit was to accrue to the defendants than to the complainant afforded to complainant no ground for a rescission of the contract; (8) that the option was assignable and not personal or revocable; (9) that the contract was in fact assigned and all transactions handled agreeable to the desires and with the knowledge and consent of the Crokers; (10) that the defendants had not agreed to surrender the contract and option; (11) that the option was enforceable although executed by a married woman without any seal appearing thereon; (12) that the owners of an estate by entirety may

execute a valid option for its sale; (13) that neither the parol evidence rule nor the inability of a married woman to contract for the sale of her land by parol prevents proof of the complete history of the transaction in a trust of this character; (14) that the contract was duly executed and acknowledged without any fraud or duress; (15) that the increase in the market value of the land did not prevent the equitable enforcement of the contract; (16) that the defendants McDonald and Palm Beach Estates had not been guilty of champerty or maintenance; (17) that McDonald's alleged embezzlement of complainant's funds in connection with another mortgage did not pertain to the contract involved in this case or to its enforcement and was properly a matter for judicial determination in another judicial action which had been instituted by complainant; (18) that the tender made by cross complainant was sufficient; (19) that the allegations of the counterclaim had been substantially established by the proof; (20) that the action of the Clerk of the Circuit Court in handling the money tendered into Court in no way concerned the complainant, Bula E. Croker; (21) that the complainant was entitled to receive $529,466.00, together with $847,145.60 as principal; (22) that approximately $250,000.00 was due as interest on said $847,145.60 to date; (23) that interest on the last note of $211,786.40 to April 15, 1929, was likewise due; (24) that the last note of $211,786.40 with six months' interest due and payable October 15, 1929, should be paid; (25) that complainant should have the mortgage security which had been tendered; (26) that the defendants J. B. McDonald and Palm Beach Estates were entitled to have the land; (27) that the bill should be dismissed and the relief prayed in the counterclaim granted, with costs taxed against the complainant; (27) that the Court should retain jurisdiction for the settlement of any other questions that may

arise; (28) and that Bula E. Croker, the complainant, was the identical person described in and who executed the said contract and deeds dated July 12, 1920, under the name of Bula Croker.

The evidence, while conflicting, is ample under the rule prevailing here to sustain the Chancellor's specific findings on the facts. The rule is well settled that in equity, as well as at law, every presumption is in favor of the correctness of the rulings of the trial judge, and a final decree rendered by him, based largely or solely on questions of fact, will not be reversed, unless the evidence shows that it was erroneous. Tampa Water Works Co. v. Wood, 104 Fla. 306, 139 Sou. Rep. 800; McEwen v. Growers Loan & Guaranty Co., 104 Fla. 176, 139 Sou. Rep. 805; Johns v. Bowden, 72 Fla. 530, 73 Sou. Rep. 603; Carr v. Lesley, 73 Fla. 233, 74 Sou. Rep. 207; Farrington v. Harrison, 95 Fla. 769, 116 Sou. Rep. 497.

A careful study of the evidence shown by the transcript of the record fails to reveal that the Chancellor committed reversible error under the foregoing rule in deciding the equities, insofar as the facts are concerned, in favor of defendants and cross complainants in the Court below. Therefore the Chancellor's finding on the facts must be affirmed.

Neither has it been shown that the Chancellor erred in the admission or rejection of testimony as complained of by the appellee's cross assignments of error. Most of the complainants' objections were based upon Section 4372 C. G. L., 2705 R. G. S., which prohibits persons interested in the result of litigation from being examined as witnesses in regard to any transaction or communication between such witness and a person at the time of such examination deceased, as against the ''survivor'' of such deceased.

Several hundred rulings on the admission of testimony

on the ground above stated were made and these rulings *en masse* have been made the subject of a single assignment of error, and that notwithstanding the rule, which is well established here, that if any one of the rulings complained of in a single assignment of error is correct, the assignment will be overruled as a whole. Hammond v. Vetsburg Co., 56 Fla. 369, 48 Sou. Rep. 419.

Aside from the application to the present case of the rule just stated, it does not appear that Mrs. Bula Croker brought her suit as a "survivor" of Richard Croker within the meaning of Section 4372 C. G. L. *supra*. This is so because part of the land involved in this suit was owned by Mr. and Mrs. Croker as tenants by the entireties when the trust was created.

In the case of tenancies by the entireties, upon the death of either spouse during coverture, the survivor does not take by right of survivorship, as in the case of joint tenants, but continues to hold the whole by virtue of the original title. See Thompson on Real Property, Section 1736. As to the other part of the land which was owned by Mrs. Croker in fee simple, it is patent that as to such land she was not suing as a "survivor" of Richard Croker, when she sought the cancellation of her own instrument of writing relating to it.

Neither can it be said that Mrs. Croker was suing as the "survivor" of Richard Croker under the contract of July 12, 1920, which was signed by both Mr. and Mrs. Croker jointly. The death of one of several joint contractors who are defendants in a suit does not bring the case within the provision to the statute which renders the other party incompetent to testify as to transactions and communications with one of the parties who is deceased.

It is only the death of the sole party to a contract, or cause of action in issue and on trial, or the death of all the contractors on one side of it, that operates to exclude

a party on the other side from testifying in his own behalf to transactions and communications relating to the contract as to which the opposite party cannot speak. In such cases the reason for the rule does not exist and therefore neither does the rule itself apply. See Goss v. Austin, 11 Allen (Mass.) 525; Fulkerson v. Thornton, 68 Mo. 468.

Having determined that the Chancellor properly entered the decree in favor of the cross complainants in regard to their counterclaim, it next becomes necessary to consider whether or not any of the appellants' objections to the terms and conditions of that decree are well taken, and if so, to what extent such terms and conditions should be modified.

The appellants contend that the Court below should have allowed the Palm Beach Estates to perform the terms of the final decree on its part, by paying to Mrs. Croker the cash installment of the purchase price and delivering to her promissory notes on the mortgage evidencing and securing the deferred installments, not as of the date of the original tender of the same into the Court, but *as of the date of the final decree*, with interest to run from that date, at the contract rate, with interest and principal payable at the times and in the manner contracted for, after the date of the final decree. They also contend that on reversal of the final decree in the particulars complained of by the appellant and cross appellee, this Court should direct the payment of the cash installment and the execution and delivery of the promissory notes and mortgage as of the date of a corrected final decree to be hereafter entered by the Court below, with interest and principal payable at corresponding times after the entry of the ultimate final decree pursuant to this Court's mandate.

In King v. Ruckman, 24 N. J. Eq. Rep. 556, a well considered case decided by the New Jersey Court of Errors & Appeals, it was held that when a vendor refuses to con-

vey real estate according to his agreement and keeps the vendee out of possession and the rents and profits are less than the interest on the purchase money, the vendor will not be allowed such interest. It was further held in that case that where it is a part of the contract of sale that the purchaser shall have a certain time for the payment of purchase money, he will be entitled to the same credit on the subsequent execution of the contract by the Court, the postponement of such execution having been occasioned by the misconduct of the vendor. In support of the holding just stated, the Court said:

"The proposition that when unproductive lands are agreed to be sold, the vendor, breaking his contract, can refuse to convey, and thus keep the vendee from the use or improvement of the property, and when at last compelled to perform his agreement by the decree of a Court may throw the loss, in the form of accumulated interest, on the innocent vendee, appears to be devoid of even a color of justice. Such a principle would cast the burden on the innocent instead of on the faulty party. Even when the intention of the vendor has been blameless, and when he has refused to comply with his engagement from an honest belief of his rights so to do, if a loss ensues in consequence of such refusal, such loss should be borne by him. The common rule of the law is, that where one of two innocent parties is to bear a loss, he must bear it through whose act such loss has occurred. That a vendee, kept out of the possession of unproductive lands, must always be placed at great disadvantage is undeniable. And yet much of the argument in the present case proceeded on the idea that, because these premises have, since the sale, advanced in value, the complainant has suffered no injury by being kept out of possession. But this is altogether false reasoning. The change in value has nothing to do with the point. If the vendee had been put in possession the same change would have occurred. The injury to him is, that he has, by an illegal act, been deprived of the enjoyment of the property for over five years, and if he should pay the

interest claimed, he will pay precisely the same that he would have paid if he had been in possession during this long period. I do not see how any one can deny that this deprivation of enjoyment and of title is a matter of concern to a vendee. Who can say that in the present case the interest of this vendee would not have been greatly promoted by having had the opportunity to sell or improve these lands? * * * That the vendee, if kept out of possession by .the vendor, would not be charged with interest, was referred to, as a settled rule, by Lord Hardwicke in the case of Blount v. Blount, 3 Atk. 636, and from that time to the present, this rule can be traced in constant use through a long line of decisions. * * * Indeed, the rule has been almost universally applied in those instances when there was no suggestion of anything intentionally wrong in the conduct of the seller of the property. * * * The only inquiry has been whether the vendor has failed to fulfill his contract. Whether such nonfeasance was the result of an act of volition or of his inability, has not been deemed of any consequence.''

In support of its holding that where it is a part of a contract of sale that a purchaser shall have a certain time for the payment of the purchase money, he will be entitled to the same credit on the subsequent execution of the contract by the Court, the learned Chief Justice delivering the opinion in the last cited case, said:

''The next exception made by the defendant to the decree appealed from, relates to its provision directing a portion of the price to be secured by a mortgage. By the terms of the articles of agreement, the residue of the purchase money, after the payment of the first three installments, was to be secured by a mortgage on the premises, payable, with interest, in five equal annual sums, from the date of the agreement, which date was the 12th of May, 1868. The Vice-Chancellor has directed that on the execution of the conveyance for these lands, a mortgage should be executed which will give to the purchaser the same

time and modes of payment, after he acquires title, which he would have had after such event, if the transaction had been closed in accordance with the compact between these parties. This part of the order is put into dispute by the defendant, on the ground that this works an alteration of the contract, and that all that the Court can rightfully do, on a bill of this character, is to order the agreement, such as it was, to be specifically performed. But this objection, certainly, is not tenable. The contract, on this point, cannot now be carried into effect. The stipulated time for the giving of the title on the one side, and the mortgage on the other, has gone by, and is irretrievable. From the necessity of the case, there must be something substituted in this respect, for what the parties agreed. It is impracticable to execute the contract in this particular, except upon the doctrine of *cy pres*. The decree, in this feature of it, goes upon the theory that the stipulation for time for the paytime for the residuum of the price after the acquisition of the title by the purchaser, was a substantial part of the agreement, and it seems to me that this is well founded in the merits of the case. After a vendee gets title and the possession, he is then in a position to turn the land to account in the way of raising money. He can, either in whole or in part, sell or mortgage it. The complainant in this case was, by force of his agreement, entitled to this advantage, and I therefore entirely assent to the view of the Vice-Chancellor that he ought not to be deprived of it by the misconduct of the other party.''

In Bray v. Fain, 98 Fla. 250, 123 Sou. Rep. 739, this Court, speaking through Mr. Justice Terrell, in deciding a specific performance case instituted four or five years after tender of the purchase price to vendor, in effect approved the principle of the rule as stated by the New Jersey Court in the following language: ''It would be manifestly inequitable to permit appellants to collect interest on the amount of the tender all these years, when they were responsible for the delay.''

The case of King v. Ruckman, *supra,* was cited, approved and followed in Price v. Immel, 48 Colo. 163, 109 Pac. 941. Other well considered cases which appear to support the same general rule, as well as the propriety of its application to a situation such as is here presented, are: Reddish v. Miller's Administrator, 27 N. J. Eq. 514; Mitchell v. Mutch, 189 Iowa 1150, 179 N. W. 440; Worrall v. Munn, 38 N. Y. 137; Moore v. Moulton, 5 Ohio Decisions (Reprint) 466; Hart v. Brand, 8 Ky. (1 A. K. Marshall) *159; Jones v. Mudd, 6 L. J. Ch. (O. S.) 26, 38 English Reprint 749; Foster v. Deacon, 35 Ch. D. 397, 56 English Reprint 550; Shannon v. Freeman, 117 S. C. 480, 109 S. E. 406.

We are therefore of the opinion that the appellants' contentions with regard to an abatement of the interest which accrued on the agreed purchase price *pendente lite* are well taken and that the decree should be modified to accord to appellants the benefit of such an abatement when complying with the decree.

We are further of the opinion that in ordering the contract of purchase to be specifically performed by Mrs. Croker, that the appellants should be permitted to give notes and security, not as of the date of the original tender of same into Court on October 15, 1924, but as of the date of the final decree entered on August 21, 1929, with interest to run from that date, at the contract rate, with deferred installments of the purchase price and interest thereon, to be payable at corresponding times, and in the manner contracted for, beginning with the date of the final decree above mentioned.

To the extent necessary to give effect to this holding the final decree should be reversed and the cause remanded with directions to modify the final decree according to the holding of this Court just stated.

We find no authority, however, which will warrant us

in going further and directing the cash installments and the execution and delivery of the promissory notes and mortgage for the deferred installments of the purchase price, to be made as of the date of the modified final decree. Therefore that contention of appellants must be overruled and disallowed on this appeal.

Appellants superseded the final decree when they took their appeal. Whatever delay has been occasioned with reference to the performance of that decree is chargeable to the act of the appellants, and not to any act of the appellee, and any losses resulting therefrom must therefore be borne by the appellants.

The payment of the cash installment and the execution of the notes and mortgage enjoined upon appellants by the modified decree when entered, should bear date as of the original entry of the final decree in the first instance, and the deferred installments of the purchase price, with interest thereon, should be made payable at periods corresponding to the terms of the option contract, commencing with the date of the original decree, not the date of the modified decree which has been directed by us.

Likewise appellee, Bula E. Croker, should be allowed interest at the legal rate, on the unpaid amount of the initial cash installment of the purchase price, from the date of the final decree as first entered, to the required date set for the payment thereof by the appellants in compliance with such final decree as modified. Appellee should also be awarded by the decree, payment of any deferred installments, and interest thereon which would have become due and payable subsequent to the date of the final decree, had such decree been entered in the first instance in accordance with this opinion.

In short, the appellants should be required by the modified final decree when entered, to comply with such terms and conditions as we herein hold should have been in-

cluded in that decree in the first instance, making their compliance therewith constitute a full performance thereof up to the date of such decree as hereafter modified and entered.

By one of the assignments of error appellants take the position that the $529,466.00 which they paid into the registry of the Court at the time they filed their counterclaim was equivalent to a payment to the appellee, Bula E. Croker, and that she is chargeable with that amount. The appellants therefore complain that the Court in its final decree required them to pay this sum of money to the appellee. The Chancellor held that the payment of the money to the Clerk of the Circuit Court and the handling of the money by the Clerk of the Circuit Court after it was tendered into Court through him in no way concerned the complainant, Bula E. Croker, and the complainant was entitled to receive as her first payment for the land the sum of $529,466.00 without any deduction from that amount for the sum which was lost by the insolvency of the depository bank in which the money was placed. We agree with that conclusion.

The payment of money into court as an unconditional tender by way of attempted payment of same admitted liability passes title to the money so paid irrevocably to the party to whom it is tendered, though he does not accept the tender, or does not accept it until after judgment has gone against him. In such cases the custody of the law is the custody of the plaintiff and the action of the defendant operates as a final and irrevocable transfer. If the fund is lost or stolen, the loss falls on the plaintiff, not the defendant who has no further interest in the money. But if the money is not properly paid into the court so as to become a fund of the court, the title is not transferred to the plaintiff.

But where one is not defending against a claim, but is

seeking affirmative relief to which as a condition precedent it is essential that he tender an amount due, the payment of the money tendered into court does not transfer the title to the other party, but it remains in the one making the tender, subject to the final outcome of the suit. To hold otherwise would make the payment of money into court under the circumstances an exceedingly dangerous trap for one to enter, for, if he failed in the action he would not only lose the right which he claimed, but would also lose the money which he paid into court for the purpose of meeting a condition precedent for enforcing his right. The foregoing is the rule on this subject as stated in 26 R. C. L. pages 656-658. It is also the rule which was approved by this Court in the case of Quinn v. Phipps, 93 Fla. 805, 113 Sou. Rep. 419, 54 A. L. R. 1173. In the case of Franklin v. Ayer, 22 Fla. 654, upon which appellants rely for their contention to the contrary, the tender there made was a strict legal tender, not as a condition precedent to enable them to obtain equitable relief, but as a *payment* into court of the mortgage debt in controversy.

In this case the payment by appellants to the Clerk was without any order of the Court directing such payment, and such payment was not strictly necessary without such order. See Walker v. Close, 98 Fla. 1103, 125 Sou. Rep. 521; Webster v. French, 11 Ill. 254. This circumstance made possible the withdrawal of the fund at any time by appellants, where there had been no acceptance by the appellee. Indeed, the record tends to show that this money, although at one time tendered into court and placed to the credit of the Clerk of the Circuit Court and subject to his check, was in fact withdrawn by the Palm Beach Company, the concern which furnished the money for appellants to enable them to make their tender effective. Thereafter the money appears to have been

transferred, at the instance of Palm Beach Company, to the trust department of the bank where it was first placed on deposit. Afterwards the money was invested by the trust officer of the bank in real estate mortgages. The fact that $217,000.00 thereof has been lost and is not now available to be used by appellants, appears to have been directly attributable to the inability of the bank to realize the full amount of all that was invested,—and so invested apparently with appellants' approval.

Under such circumstances, the Chancellor properly held that Mrs. Croker was in nowise concerned with the sum of money deposited at the time of the filing of the counter-claim and that the loss thereof, in whole or in part, should fall upon the party who deposited it and not upon the party for whose benefit the tender was made.

Proper practice would seem to suggest* that in cases of this kind where money is to be tendered into Court by one seeking equitable relief as a condition precedent to enable him to obtain such relief, that the fact of such deposit should be properly called to the Chancellor's attention by an appropriate motion. By this means an order might be obtained from the Chancellor providing for its safekeeping and preservation intact during the pendency of the litigation. Appropriate conditions for securing such deposit, while in the hands of the Clerk of the Court, should of course be specified by the Chancellor in any such order. By following such practice, the likelihood of loss of tendered moneys, such as appears to have occurred in this case, will be largely obviated, if not rendered impossible. A requirement of the Court that adequate security for the moneys be taken and held by the custodian of the fund under appropriate conditions and regulations would effectually safeguard both the Court and the litigat-

---

*But in a Court of Chancery there is no fixed rule on the subject. Webster v. French, 11 Ill. 254.

ing parties pending the determination of the right to the disbursement of the deposited funds.

We find no error in the Chancellor's decree concerning the requirement as to payment of the taxes. The appellants held legal title to, and were in possession of, the lands which the appellee agreed to sell. The taxes were assessed thereon according to the value of the land and in consideration of the protection of government which the property was receiving. This added to its value.

While it is true that where a vendor refuses to comply with his contract and the purchaser obtains a decree of specific performance, the purchaser *may* properly be relieved from the payment of taxes which he would have been required to pay had the contract been consummated in the time prescribed therein (Price v. Immel, *supra*), we do not think that the instant case should be absolutely controlled by the rule stated. Here there are peculiar equities and conditions involved. The apparent intendment of Mrs. Croker's contract is to the effect that in the event of a sale of the property, she should be reimbursed for the amount of the taxes paid out by her in addition to the stipulated compensation which it was agreed she should receive. The subject-matter of the suit, which is the land involved, has received all the benefit to be realized from the protection of government. To pay for this was the purpose for which the taxes were assessed and collected.

The subject-matter thus preserved, has been by the decree of the Chancellor awarded to appellants as against appellee. No rents, issues and profits have been realized by either party. Both parties intended to utilize the land for the purpose of sale. The taxes can therefore properly be charged against the ultimate beneficiary of the value of the land which appears to have increased after the contract ordered enforced was made.

Under the special circumstances of this case also, and in

consideration of the equitable benefits awarded, it was, to say the least of it, within the sound judicial discretion of the Chancellor to require that Mrs. Croker should be reimbursed for the amount of the taxes specified in the final decree to be paid to her. It does not appear that the Chancellor has abused that discretion by incorporating such a requirement in his decree as a condition precedent to granting relief on the counterclaim, so that provision of the decree should be affirmed and it will be so ordered.

The Chancellor specifically found that the contract had been assigned to Palm Beach Estates, and that the transaction had been handled aggreeable to the desires of, and with the knowledge and consent of, the Crokers. This finding, as we have heretofore stated, has been affirmed by us.

Conceding that finding to be true, it appears that Mrs. Croker having been found to have consented to McDonald's assignment and conveyance of the property to the corporation known as the Palm Beach Estates, and to the activities of that corporation in dealing with the property, expending money thereon and exerting its efforts in seeking to obtain sales, should not be now heard to advance the point, raised by her for the first time on this appeal, that Palm Beach Estates as a corporation, could not come into Court with its counterclaim, and pray that a court of equity aid it in obtaining the benefit of the contract lawfully assigned to it, because the court would thereby authorize the corporation to commit an act which its charter forbids, namely, incur an indebtedness above the $250,000.00 stated limitation provided for in its charter. See Southern Life Ins. Co. v. Cole, 4 Fla. 359.

It is not shown that any provision of the charter forbids the Palm Beach Estates from acquiring *title* to the lands in question. Nor has any plea of *ultra vires* been filed by Mrs. Croker in answer to the appellants' counterclaim

by which to properly raise the question of the corporate authority of Palm Beach Estates to lawfully give its notes and mortgage to secure the payment of the purchase price of land which it is admittedly authorized to acquire title to, and hold in its corporate capacity. See 3 C. J. page 703, Section 595.

The doctrine of *ultra vires*, whether invoked for or against a corporation, is not favored in the law. It should never be applied where it will defeat the ends of justice if such a result can be avoided. City of Antonio v. Mchaffy, 6 Otto 312, 24 L. Ed. 816.

There is no provision of law which makes it unlawful for Palm Beach Estates to take title to the land which it seeks to acquire under its counterclaim. Even if there is a provision of the corporate charter of the Palm Beach Company to the effect that the highest amount of indebtedness of liability to which the corporation shall at any time subject itself* shall be $250,000.00, and such provision may be held properly applicable to a mortgage given by such corporation to secure payment of the purchase price of lands bought by it, the title to which it is permitted to acquire, such corporation would be effectually estopped from setting up as against the vendor, the defense of *ultra vires* concerning its own notes and mortgage, after it had tendered same into court as a condition precedent to its being awarded specific performance of an agreement to convey to it title to property.

But, as we have stated, the point was not properly presented in the court below in any part of Mrs. Croker's answer to the counterclaim, and therefore the point may properly be held by us to have been waived by her and no longer open to being urged as a ground for objection to

---

*A statement in the charter required by Section 5979 C. G. L., 4050 R. G. S. For the legal effect of such a charter requirement see Douglass v. State Bank of Orlando, 77 Fla. 830, 82 Sou. Rep. 593.

compliance with the contract which had been already judicially ordered to be specifically enforced before the point was suggested.

What we have heretofore said disposes of all the principal points which have been raised and argued on this appeal, both on the assignments of error and cross assignments.

It would be an insuperable task for the Court to undertake to discuss in detail each of the many detailed points urged as grounds for appellate relief. Whether specifically discussed in this opinion or not, each assignment of error has been carefully considered, and except as otherwise indicated in this opinion, each has been found by us not to have been sustained as a sufficient cause for reversal or for further modification of the decree appealed from.

It is not amiss to say in concluding this opinion, that this Court in its consideration of this case, has become indebted to counsel for the great assistance rendered to it by the able and comprehensive briefs filed by the respective attorneys appearing in this Court for the appellants and appellee.

The manner in which the record was prepared, the form in which the briefs were cast, and the clarity with which the oral arguments were made at the bar, reflect great credit upon counsel for the respective parties, whose industry and learning thus employed to aid us, have brought us at once to a ready and practical view of the vexatious problems of law and fact presented for our solution upon the comprehensive and voluminous transcript we have had to examine.

The final decree appealed from is affirmed in part and reversed in part, and the cause remanded with directions to enter a modified decree in accordance with this opinion, the costs of this appeal to be equally divided between appellants and appellee.

BUFORD, C.J., AND WHITFIELD AND TERRELL, J.J., concur.
ELLIS, J., not participating.
BROWN, J., disqualified.

