MADDOX, Justice.
This appeal presents the issue of whether the trial court properly applied the dead man’s statute, Code 1975, § 12-21-163, to exclude testimony regarding a telephone conversation between witnesses and a deceased person.
The question of the applicability of the dead man’s statute arose in an action to determine the ownership of certain land situated in Jefferson County.
Robert Darden, Sr., died intestate in 1936, survived by his wife and seven children; his wife died intestate in 1962, survived by seven children. One of the children, Robert Darden, Jr., referred to herein as Bob Dar-den, and his wife, Eva, obtained quitclaim deeds from the other heirs. When Bob Darden died, his wife, Eva, claimed all right, title and interest in the property.
During the trial, Ann Darden Hentz, one of the plaintiffs, and a sister to the deceased, Bob Darden, attempted to testify about a telephone conversation between her and Bob Darden. She testified that she and her brother, Bill Darden, were in Birming *926 ham and that Bob and Eva Darden were in New York. The defendant, Eva Darden, objected to the testimony on the grounds that the dead man’s statute prevented the use of the testimony; the court sustained the objection.
The plaintiffs made the following offer of proof:
MR. STILL: Your Honor, we make an offer of proof that this witness would testify that during that telephone conversation, Bob requested that Bill had contact with other family members and talked to them about executing quitclaim deeds to Bob for the purpose of simply having transactions involving the land so that deeds, quitclaim or deeds or contracts of various sorts, did not have to be sent around to each family member all over the United States.
Bill Darden’s testimony regarding the same telephone conversation was similarly excluded. Plaintiffs again made the following offer of proof:
MR. STILL: Your Honor, we again make an offer of proof that the same terms as I said with the previous witness that this witness would testify that the four of them discussed the procedure by which the property, particularly the Lew-isburg 40 acres that we are talking about here, would be transferred to the name of one person so that that one person would carry out any transactions relating to the property without the necessity of sending around deeds or consent forms or contracts to each person who happened to hold any interest in the property.
Marilyn Darden, a witness for the plaintiffs, was asked about a visit she made to the home of her uncle and aunt, Bob and Eva Darden, in New York in 1967. The following is shown by the transcript of the evidence:
Q Did you ever have occasion to visit your uncle’s home in Massapequa, New York?
A Yes, sir, I did.
Q That is your Uncle Bob, I am talking about?
A Right.
Q Do your remember when that happened to be?
A Well, there were a number of times when I lived in New York, and the last time I visited him there was in the summer of 1967.
Q Were you living in New York at that time?
A No. I was up there for a visit with a friend of mine.
Q All right. How long did you spend with your uncle at his house?
A I believe I went over one evening or maybe perhaps in the afternoon, one evening.
Q Was there anyone else there?
A Yes, sir. My cousin, Joy, and my aunt Eva.
Q During the evening, did any of the conversation deal with the Lewisburg property or the CuIIam Street property?
MR. WINSTON: Judge, we are going to object to that as getting back into the type of conversations we contend violate the Dead Man’s Statute as well as this being hearsay.
THE COURT: I am going to sustain the objection to the question in the form that it is posed on those grounds.
MR. STILL: Your Honor, we would make an offer of proof that during this conversation at the home of Bob and Eva, that they discussed with Marilyn the ownership.
THE COURT: You mean, they both spoke the same words at the same time?
MR. STILL: No, sir.
THE COURT: You say they discussed.
MR. STILL: Well, there was a discussion between the three of them, Your Honor, regarding the ownership of the Lewisburg property, the Cullam Street property, all the property that was owned jointly by the brothers and sisters and then the nieces and nephews. And that during that conversation, Bob suggested to Marilyn that the only way in which the property could reasonably be handled was to transfer ownership to one person for the purpose of — Well, for an ease of *927 transferring title to any third party who might wish to buy the property. And that this was the sole reason for any sort of quit deed to be executed by the relatives to Bob.
THE COURT: All right. The objection made to the question as posed is still sustained, notwithstanding offer of proof.
The issue is squarely presented: Does the rule of evidence found in the dead man’s statute preclude the testimony of plaintiff’s witnesses regarding transactions between them and Bob Darden, now deceased, and his wife, Eva Darden? For the purpose of addressing this issue, we accept as fact that the plaintiffs could prove what they offered to prove, that is, that Eva Darden was present when her deceased husband made the statements attributed to him.[1]
If the plaintiffs could, in fact, show that Eva Darden, wife of the deceased and grantee under the deeds, was present and could give her husband’s version of the transaction, the dead man’s statute would not apply. The rule of evidence, under these circumstances, was stated in Homewood Dairy Products Co. v. Robinson, 254 Ala. 197, 48 So.2d 28 (1950):
In the matter here material several states have interpreted their statutes, respectively, which prohibit testimony by an interested witness as to a transaction with or statement by the deceased person under circumstances there stated. The concensus [sic] of opinion is that the transaction with or statement by a deceased person is not such within such statute when it was with him and one or more others associated with the deceased in the transaction, for such other one still living may give his version of the transaction, and, therefore, the reason for the exclusion does not exist. Johnson v. Townsend, 117 N.C. 338, 23 S.E. 271; Goss v. Austin, 11 Allen, Mass., 525; Fulkerson v. Thornton, 68 Mo. 468; Peacock v. Stott, 90 N.C. 518; Kale v. Elliott, 18 Hun., N.Y. 198; Palm Beach Estates v. Croker, 106 Fla. 617, 143 So. 792; McConnon & Co. v. Kuhlmann, 220 Mo.App. 821, 278 S.W. 822; Paddock v. Potter, 67 Vt. 360, 31 A. 784.
If the plaintiffs could prove, as they offered to do, that the statements made by the deceased husband were made in the presence of his wife, who was one of the grantees under the quitclaim deed, then the statement would not have been within the dead man’s statute. In making this determination, we do not decide that any alleged statements by the deceased in the telephone conversations were, in fact, made in the presence of the deceased’s wife, nor do we hold that the trial judge could not determine whether they were made in her presence prior to ruling on the competency of the evidence.
Regarding the conversation between the deceased and his niece, Marilyn Darden, Eva Darden seeks to sustain the trial court’s ruling with the argument that the plaintiffs “did not prove that [she] was associated with the deceased during any conversations between Marilyn Darden and the deceased, Bob Darden.... ” The record shows that the plaintiffs offered to prove that there was a discussion between Bob and Eva Darden and Marilyn Darden concerning the ownership of the subject property.[2]
*928 The judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and JONES, SHORES and BEATTY, JJ., concur.

. At the time the testimony regarding the telephone conversation was offered, there was testimony that Eva Darden was a party to the conversation. When Eva Darden later testified, however, she appeared to deny that she was present, but her testimony was somewhat equivocal, as is shown by the following:
Q You were present when Ann Hentz and Bill Darden were testifying about some conversation that took place?
A I was.
Q Do you recall the conversation?
A I know there were conversations. I found references in the letters to them. If they called, I am sure I greeted them, but I do not think we even had an extension. And they asked to speak to him. I let them speak to him.
Q Were you on the telephone during these conversations?
A No. I think it would have been impossible, because as I remember, we did not even have an extension.

. Rule 43(c), ARCP, provides a procedure for making a record of excluded evidence. Since *928 this case was tried by the court without a jury, the court could have authorized the court reporter to take and report the evidence in full and thereby provide this court with a better opportunity to review its ruling. See Rule 43(c), ARCP.