DRAWDY INVESTMENT COMPANY, a Corporation, *Appellant,* A. BEAUCLAIRE ROBINSON, Executrix of the Last Will and Testament of SAMUEL ROBINSON, Deceased, *Appellee.*

Division B.

Opinion filed August 1, 1928.

*Macfarlane, Pettingill, Macfarlane & Fowler,* Attorneys for Appellant;

*Massey, Carpenter & Fishback,* Attorneys for Appellee.

BUFORD, J.—This case comes to us on appeal from an order denying petition by the original defendant in the court below for leave to file bill of review.

In the original suit, Samuel A. Robinson filed his bill of complaint against Drawdy Investment Company to foreclose a mortgage on real estate given to secure a note for $10,000 with interest at 6%, executed April 26, 1920, and

payable $1,000.00 on or before May 1, 1921, and $1,000.00 on May 1st of each succeeding year, including 1925, and a balance of $5,000.00 on May 1, 1926. The bill alleged that defendant had paid the interest on the whole indebtedness to May 1, 1922, and had paid $500.00 on principal and on or about June 1, 1923, had paid $2,077.50, $570.00 of which had been applied as interest on $9,500.00 for one year, and $1,507.50 on principal, and that on May 1, 1923, there remained delinquent and unpaid the sum of $992.50, according to the terms of the note, and that by reason of an acceleration clause in the mortgage all the balance unpaid on the note became due and payable and the mortgage subject to foreclosure. Later an amendment was filed alleging that since the institution of the suit an additional $1,000.00 of the note had matured.

On November 5, 1923, defendant filed its answer admitting the execution of the note and the mortgage as alleged and in its answer it was alleged that the defendant had made payments on the note as follows: July 11, 1921, $5,600.00, $5,000.00 of which was to be applied to principal and $600.00 interest on the whole note to that date; that on May 1st, 1922 it paid $300.00 interest. On October 5, 1922, it paid $512.75, $500.00 to be applied on principal and $12.75 interest to that date on $500.00; on June 1st, 1923 the sum of $2,077.50; that there was left unpaid on the note the sum of $705.00 only. After the complainant filed its amendment as above stated alleging the accrual of an additional $1,000.00 in default, defendant filed an additional answer alleging that prior thereto it had tendered the complainant the full amount due on the note, together with costs and attorney's fees. Testimony was taken by both parties and a final decree was rendered on January 12, 1925, in favor of complainant for $8,815.39, and $1,000.00 attorney's fees. Appeal was taken from this decree to the

Supreme Court and on April 21, 1926, the decree of the lower court was affirmed by memorandum decision.

On June 22, 1926, the Supreme Court on application of the defendant, granted the defendant leave to file in the circuit court its petition and application for leave to file bill of review. On July 2, 1926, the defendant filed in the Circuit Court of Orange County its petition for leave to file bill of review, together with its proposed bill of review; also affidavits of A. S. Drawdy, Deborah Drawdy and Anna S. Drawdy, with motion to revive the action in the name of the peresent complainant. The petition came on for hearing on March 4, 1927, at which time complainant filed objections thereto, and the defendant submitted two additional affidavits, one of E. R. Bliss and one of J. J. Dominick, and the complainant filed an affidavit by C. A. Andrews, formerly judge of that circuit. At the hearing certain written documents were introduced in evidence. One of those documents was the original bank statement of the account of A. S. Drawdy with the State Bank of Orlando & Trust Company, and an envelope of the State Bank & Trust Company of Orlando, Fla., postmarked "Orlando, Fla., July 30, 9 p. m." and two checks signed by A. S. Drawdy, one dated July 15, 1921, payable to A. S. Drawdy in the sum of $600.00 and the other dated July 11, 1921, payable to S. A. Robinson for the sum of $5,600.00. There were also in evidence certain check stubs, one of which stubs showed check for $600.00 dated July 13, 1921, payable to J. T. Drawdy and another check stub dated July 11, 1921, for $5,600.00 payable to S. A. Robinson.

The check above referred to payable to A. S. Drawdy appeared to be endorsed on the back "A. S. Drawdy" and under that endorsement "J. T. Drawdy" and the perforations on that check indicate payment at the bank on July 13, 1921. The bank statement corresponds with this. It

also appears that the perforations showing payment by the bank are made through the signatures of A. S. Drawdy and J. T. Drawdy. The check for $5,600.00 is endorsed on the back "S. A. Robinson" and the perforations indicate that this check was paid by the bank on July 11, 1921, and the perforations passed through the written endorsement "S. A. Robinson" and also passed through words written in the lower left corner of the check "principal and interest on mortgage note."

On the 4th of March, 1927, the court made an order reviving the action in the name of the present complainant and reciting the various affidavits and other evidence introduced and took the matter under consideration for final determination. On October 17th, 1927, the court made its order denying petition for leave to file bill of review and from this order this appeal was taken.

A check for $5,600.00 becomes material because when the testimony was taken in the original suit Drawdy could not, or did not, produce this check. He at that time claimed that he had never received the check from the bank; that he had made application to the bank for the check and that the bank had been unable to produce it. The complainant in that suit, Mr. Robinson, claimed that he had never received a check for $5,600.00 but had only received at that time check for $600.00, which he claimed he received on or about July 11, 1921. Drawdy introduced in evidence several witnesses who testified that they saw the check delivered and saw Robinson make a memorandum of the credit. The original check stub was introduced and a duplicate of the bank statement was introduced, but it appears that Drawdy's failure to produce the original check caused the chancellor to discredit his evidence in this regard and to give credit to the statement of the complainant, Robinson, that he had not received that payment.

Drawdy's statement supporting his petition to file a bill

of review may be entirely reconciled with his statement as contained in his evidence on hearing prior to the final decree. He then stated that he had not received the checks from the bank. His statement in support of his petition to file the bill for review is that the checks were found by accident in a drawer of a washstand at his home in an envelope as they came from the bank, with his statement for the month of July, 1921, and that that envelope had never been opened. We can easily understand how a man of ordinary affairs might be so situated in a country home that mail of this character might be received by some member of the family and put in some place which that member of the family might then consider a very proper place to put it, but where no one would ever think to look for it again. We know of no directions which may be given or adopted which will insure the finding of lost or misplaced papers. It is a matter of common experience that an important paper becomes misplaced and after it has long been given up for lost it is one day discovered in that place where apparently the owner's hands and eyes must have passed over it many, many times.

We have carefully examined the check for $5,600.00. There appears nothing about it to cast any suspicion upon its genuineness. Several highly creditable witnesses of long experience in the examination and identification of handwriting testified that the signature on the back of the check was that of S. A. Robinson, the complainant in the original suit. The bank perforation marks passing through that signature show conclusively that it was not placed on the check after the check was marked "PAID" at the bank. The butt of the check where it was torn from the stub, when placed against the stub which was introduced as the original, and placed under a magnifying glass shows that not only does that part of the perforation appearing on the check correspond exactly with the perforations on the

stub, but their minute torn places between the holes of perforation fit exactly. Had this check been introduced at the hearing before the final decree, it is morally certain that in that decree the defendant in that suit would have had credit for the $5,600.00 and that to require the performance of the decree as it was entered is to require the defendant to pay this amount of money the second time, which is not in accordance with our views of equity and good conscience.

The record shows that there were no business transactions between Drawdy and Robinson except that involved in this suit.

Robinson testified in the original suit on January 26, 1924, and on November 17, 1924.

The record shows that on June 8, 1925, when Robinson was 79 years of age, application was made to the county judge for the appointment of a lunacy commission to examine into the sanity of the complainant, S. A. Robinson, and on the 10th day of June, 1925, the said Robinson was adjudged insane, the cause being general paresis of the brain, and the record shows his particular hallucination to be that he possessed unlimited riches.

When we apply that general knowledge which is possessed by all of us in regard to that malady known as paresis, we may take judicial cognizance of the fact that paresis does not usually completely dethone reason over night, but that it does its work slowly, gradually stealing away and consuming the faculties of the afflicted, causing the body to become palsied, the memory to become unreliable and the mind undependable, entertaining hallucinations having no basis in fact, but which are as real to the patients as any true facts in life could possibly appear. Doctors Witthaus and Becker in their work on Medical Jurisprudence Forensic Medicine and Toxicology, discuss-

ing insanity under the head of General Paresis, Vol. 3, page 318, say:

"In a medico-legal aspect, according to Legrand Du Saulle, general paralysis may be divided into four distinct periods, a short summary of which I will give, although the pathology of the disease does not sustain any such artificial division into periods.

"1. *'Periode pordromique,'* or prodrominal period, in which while many irregular mental or physical symptoms may be present, they cannot be distinctly recognized as characteristic of the disease, except in the light of its future development. There may be indeed for several months, or even years, a combination of characteristic phenomena, as one or several apoplectic attacks with loss of consciousness and passing paralysis of the arm or leg, or temporary aphasia. More important is the change in the personality. There is often an exaggeration of former tendencies. There is usually extreme irritability, or again depression. There is also, even at this period, an impairment of the memory, and an evident inability to perform the usual work, even that of the most routine character. About this period there will now appear the feelings of self-satisfaction and expansiveness, which really usher in the so-called—

"2. *'Periode initiale'* or initial period of the disease. This is usually expansive, showing exaggeration of the ego, but may at times be depressive, the patient apparently recognizing his mental condition. The *delire des grandeurs* is, however, far more frequent. The sense of well-being is thoroughly established at this period—a feeling of power and ability to do, entirely at variance with the actual mental weakness. There is an

exaggerated idea of wealth and strength. It is at this period that speculations of the wildest character may be undertaken. In the depression there is constant dread of approaching ruin; a belief that acts have been committed which have dishonored them. There may at this time be a cessation of the progress of the disease, or else what may appear as a recovery, but there is sooner or later the establishment of the full physical and mental signs of the disease in the so-called—

"3. '*Periode d'estat*,' which continues for months, passing into the stage of complete dementia, i. e., the fourth stage, or

"4. '*Periode terminale*.'"

With these conditions in mind we could not attribute to the complainant, S. A. Robinson, a vile, sinister and dishonest motive in testifying that he had never received that check for $5600.00 but we may fairly and reasonably assume that when he testified he believed that he was telling the truth and that this belief on his part was brought about not by the facts as they really existed but by the influence and the ravages of that disease which soon thereafter made such inroads as to completely dethrone his reason.

The writer can formulate no better expression of the law as applicable to this case than that contained in 21 C. J. 756, *et seq*, where it is said:

"Diligence in attempting to procure the evidence in time for use in the original cause is an essential element of newly discovered evidence as ground for a bill of review. According to Bacon's ordinance, the evidence must be such as could not 'possibly' have been used in the original cause. This extreme rule has found at least verbal expression in some American cases. But the

modern rule, supported by the great weight of authority, is that reasonable diligence must have been used to produce the evidence in the original cause, mere forgetfulness is no excuse for not producing evidence in the original cause, and the same is true of poverty or ignorance of the party and of counsel's negligence or erroneous advice. Where persons were known to have some knowledge respecting the matters in controversy, their refusal to state what their testimony would be is no excuse for not using them as witnesses in the original cause. Prior concealment of all knowledge by the new witness excuses the failure to use him. Matters on the public records can not be made the ground of a bill for newly, discovered evidence.

Relevancy, materiality, and probative effect. In order to be ground for a bill of review, the newly discovered evidence must be relevant and material, and of such weight and character that on a rehearing it will probably produce a different result and one more beneficial to plaintiff than the original decree. As a general rule, a bill of review can not be grounded on new evidence of a merely cumulative character or which goes merely to the impeachment of witnesses. But the rule as to cumulative evidence is not absolute, the matter being in its final analysis a matter of discretion, which sparingly and cautiously, will be exercised affirmatively to entertain the bill, although the new evidence is merely cumulative, where such evidence is decisive of the case. Similarly, the discovery that the evidence on which the decree rests was perjured or forged has been recognized as ground for a bill of review, as where the newly discovered evidence of the perjury is written or record evidence of the witness' conviction for the perjury is offered. Cumulative evidence is additional

evidence of the same kind to the same point, that is, evidence which is merely of a confirmatory or contradictory character. There is danger of confusing the question of the cumulative character of evidence with the question of relevancy and materiality. It is settled that the evidence must be relevant and material, which, taken broadly, means relevant and material to the issues in the original cause. A broader rule is that it must bear upon the merits of the case.''

\* \* \* \* \* \* \* \* \*

permanency and reliability. There is considerable authority, especially among the early cases, to the effect that where the new evidence relates to issues previously tried it must be of a permanent and unerring character, such as a writing, document or record. Certainly, such evidence is of the most satisfactory character, and, subject to the other requisites of newly discovered evidence, will sustain a bill of review. But it would seem that no consideration of either justice or policy exists why oral evidence, if it is of sufficient weight to convince the court that the decree is erroneous and it is shown that it could not by the use of reasonable diligence, have been discovered in time to be used on the final hearing, should not be held to be sufficient to sustain the bill, and there are authorities which expressly hold that any evidence, whether written or oral, and whether relating to facts controverted on the former hearing or entirely new facts, is sufficient if it is sufficiently cogent to justify the conclusion that they will change the result if a new hearing is had. This rule seems to be borne out by the fact that most of the cases declaring newly discovered evidence to be one of the ground for a bill of review fail to make any distinction as to either the nature

of the issues or the character of the evidence, except with relation to probation value."

The order denying the petition to file the bill of review should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J., AND TERRELL, J., concur.

ELLIS, C. J., AND STRUM AND BROWN, J. J., concur in the opinion and judgment.