EDWARD B. GAMBLE v. GAMBLE HOLDING CORPORATION, a corporation; GEORGIA ICE COMPANY, a corporation; and ROBERT HOWARD GAMBLE.

162 So. 886.
Opinion Filed July 1, 1935.
Petition for Rehearing Denied Sept. 3, 1935.

*George M. Powell* and *John W. Dodge,* for Appellant;

*F. P. Fleming, C. R. Lichliter* and *Fleming, Hamilton, Diver & Lichliter,* for Appellees.

PER CURIAM.—The record in this cause discloses that in December, 1921, Robert Gamble conveyed to Edward B. Gamble, the appellant, three shares of the capital stock of Georgia Ice Company, and in January, 1923, the same vendor conveyed to the same vendee twelve hundred fifty shares of the capital stock of said company. The first conveyance as thus enumerated was evidenced by Certificate Five and the second conveyance by Certificate Nine. The reason for said conveyances will be further exemplified herein.

In January, 1927, the appellant, as complainant below, filed his bill of complaint against appellees as defendants in the Circuit Court of Duval County praying that said twelve hundred and fifty-three (1253) shares of the capital stock of Georgia Ice Company be adjudicated to be his absolute

property and that Certificates numbered Five and Nine
evidencing his ownership of said stock be immediately re-
deemed from any and all pledges to which they may have
been subjected by defendant, and delivered to complainant
or his solicitors of record. The bill further prayed that an
accounting of all debits and credits be made to aascertain
and determine what, if any, dividends have been or should
have been declared and paid to the complainant from the
income incident to said shares of stock; that complainant's
title to said shares of stock be decreed to be superior and
paramount to that of defendants, and that defendants be
forever enjoined from asserting any title or ownership in
said stock or from interfering in any way with complain-
ant in his full and free use thereof.

The bill of complaint was seasonably amended, answer
on the part of the Georgia Ice Company was entered, a
large volume of testimony was taken, and on final hearing
the chancellor found that Certificate Number Five, de-
scribing three shares of the capital stock of Georgia Ice
Company, was apparently issued December 13, 1921, to
the complainant by Robert Gamble; that the said stock was
never sold or given to the complainant or ever in fact be-
came his property, but that it was colorably transferred to
him solely to qualify him to act as an officer of said de-
fendant, Georgia Ice Company, during the time he was em-
ployed by it and that said shares of stock were in truth
and fact the property of Robert Gamble at that time and
until they were by him transferred to the Gamble Holding
Corporation just before his death.

As to Certificate Number Nine the chancellor found that
it was apparently issued by Robert Gamble January 2, 1923,
to complainant for twelve hundred fifty shares of the cap-
ital stock of Georgia Ice Company, but that said stock was

never sold or given to complainant or ever became his property, nor was it ever transferred to or accepted by complainant, that said shares of stock were colorably transferred to and colorably accepted by complainant solely by reason of an understanding and agreement between the said Robert Gamble and the said complainant in furtherance of a conspiracy, combination, and design between them whereby said Robert Gamble sought to evade the payment of certain income taxes due by said Robert Gamble to the United States of America on account of dividends accruing to him, the said Robert Gamble, by virtue of said shares of stock; that said shares of stock were in truth and in fact the property of the said Robert Gamble at the time of said conveyance and until transferred by him to the Gamble Holding Corporation just prior to his death.

Pursuant to such finding the chancellor on May 11, 1931, entered his final decree finding the equities to be in favor of the defendants; that the complainant having failed to make a case was not entitled to the relief prayed for, and that his bill of complaint as amended was without equity and should be dismissed, which was done.

The final decree was appealed from. The appeal was dismissed without prejudice, and on May 26, 1932, more than one year later, the appellant as complainant below filed the instant suit by a bill in the nature of a bill of review naming different defendants, but praying that the final decree entered May 11, 1931, in the former suit be vacated and set aside and that said final decree be, upon hearing, modified and altered, that complainant be granted the relief originally prayed for in his bill as amended both as to his title and ownership of the said 1253 shares of stock of the Georgia Ice Company and as to an accounting for all dividends paid thereon to parties other than complainant.

A motion to dismiss the bill in the nature of a bill of review filed in the latter suit was granted and the instant appeal was prosecuted from that decree. The sole error assigned is predicated on the decree dismissing the original and the amended bill of complaint in the last named suit.

Much is incorporated in the briefs of counsel on the question of whether or not the latter bill of complaint was in fact a bill of review, a bill in the nature of a bill of review, or should be more appropriately labelled by some other name. (A bill of review is brought for the purpose of having a decree reviewed, corrected, or reversed. It must be brought within the time allowed for an appeal. A bill in the nature of a bill of review is to all intents and purposes a new suit involving the same subject matter. Its function is the same as that of a bill of review but is not restricted by the time allowed for appeal and may be interdicted by laches. It is filed by consent of the court.) We will consume no time in a discussion of these academic questions at this time. We further pretermit any discussion of the question of whether or not the bill was seasonably filed, as we do other questions raised. The chancellor brushed all these matters aside and disposed of the case on the merits as revealed by the record and from our impression of it he was warranted in doing so.

Stripped of its superfluities the former bill of complaint filed in January, 1927, seeks to confirm the title of the complainant in and to 1253 shares of capital stock of Georgia Ice Company. The relief prayed for in that bill was denied and the latter bill filed May 26, 1932, sought to set aside the final decree entered May 11, 1931, in the former suit on the theory that it was procured through fraud, said fraud being predicated solely on the theory that complainant was, through the wilful, malicious, and fraudulent concealment

of defendants and their counsel, denied the advantage of Exhibit One, attached to the latter bill of complaint, his contention being that Exhibit One constituted newly discovered evidence that would have produced a different decree if it had been known to the chancellor.

In fine, then, the sole question with which we are confronted is whether or not Exhibit One attached to the bill filed May 26, 1932, was fraudulently concealed from the complainant by defendants or their counsel in the former case and if it was so concealed would it have changed the result if it had been in evidence.

Exhibit One which is alleged to have been concealed from complainant was an affidavit made by A. M. Dixon as attorney in fact for Robert Gamble. It certifies among other things that the transfer of the 1253 shares of stock conveyed by Robert Gamble to complainant in January, 1923, was a *bona fide* sale and is in striking contrast to Dixon's testimony in the former suit as to the transfer. It is accompanied by Exhibit Two, being a copy of Robert Gamble's income tax return and is attached to the bill of complaint in the latter suit. It was on file in the United States treasury during the litigation of both suits.

In his decree dismissing the latter bill of complaint the chancellor found that Exhibit One would not have changed his decree and conclusions as to the original suit if it had been present and introduced in evidence, that it was not shown that any application was made to the Treasury Department for copy of said Exhibit, that said Exhibit could have been secured in the original suit by due diligence, that the latter bill failed to carry sufficient allegation of fraud in the suppression of Exhibit One; that no sufficient ground was shown in the latter bill for relitigating the cause, and that the latter bill failed to show facts to prove

that the newly discovered evidence (Exhibit One), was true and that the oral testimony of Dixon given in the original suit, which contradicted Exhibit One, was untrue.

We are in other words importuned to reverse the decree below because of an inconsistency in Exhibit One and Dixon's testimony given in the original suit. In the light of the record here we do not think this should be done. The evidence as a whole discloses that the three shares of stock described in Certificate Five were colorably transferred to complainant by Robert Gamble to qualify him (complainant) to act as an officer in Georgia Ice Company, and that the 1250 shares of stock described in Certificate Nine were colorably transferred to and accepted by complainant solely by reason of an agreement between complainant and Robert Gamble in furtherance of a conspiracy to evade certain income taxes due by Robert Gamble to the United States of America on account of dividends accruing to him on said shares of stock. It is further shown that said stock was the property of Robert Gamble at the date of conveyance and was recognized as such until conveyed by him to Gamble Holding corporation shortly before his death.

We do not imply that there were not some conflicts in the evidence but the decided weight of it supports the chancellor's decree and even if Exhibit One had been material and was withheld from complainant, if its presence would have made no difference in the chancellor's decree we see no basis on which said decree should be reversed. The evidence as a whole is overwhelming that complainant never at any time owned the stock he seeks to recover or paid any consideration for it.

In Allen v. United Zinc Co., 64 Fla. 171, 60 So. 182, we held that to constitute fraud, a misrepresentation must be

of a specific material fact that is untrue and known to be so, and stated for the purpose of inducing another to act, upon which statements the other relies in acting to his injury.

In Drawdy Investment Company v. Robinson, 96 Fla. 397, 118 So. 157, see also 96 Fla. 406, and 118 So. 157, we held that in order to be ground for a bill of review, the newly discovered evidence must be relevant and material, and of such weight and character that on a rehearing it will probably produce a different result and one more beneficial to plaintiff than the original decree. As a general rule, a bill of review cannot be grounded on new evidence of a merely cumulative character or which goes merely to the impeachment of witnesses. But the rule as to cumulative evidence is not absolute, the matter being in its final analysis a matter of discretion, which, sparingly and cautiously, will be exercised affirmatively to entertain the bill, although the new evidence is merely cumulative, where such evidence is decisive of the case. Palm Beach Estates v. Croker, 106 Fla. 617, 143 So. 792; Hall v. Hall, 93 Fla. 709, 112 So. 623; Thomason v. Thompson, 129 Ga. 440, 59 S. E. 236, 25 L. R. A. (N. S.) 536.

It is not shown that the alleged deception practiced on complainant prevented him from fully presenting the material elements of his case or that he was kept in ignorance of what was going on or that complainant's interests were corruptly sold out to the opposing side. Those and similar situations which show that there has never been a real contest in the trial or hearing of the cause are reasons for which a new suit may be sustained to set aside or annul the former judgment or decree and open the case for a new and fair hearing. United States v. Throckmorton, 98 U. S.

61, 25 L. Ed. 93. The new evidence sought to be introduced fails of this test.

The morals of the stock trânsactions between Robert Gamble and the complainant out of which this litigation grew are in no way involved in this decision. The ultimate purpose of this suit is to confirm the title of the stock brought in question, same being a considerable portion of the estate of Robert Gamble, in and to complainant as against the defendants, they being the representatives of the other heirs of the estate. On the basis of the record complainant failed to show that there was ever an intention to make a bona fide sale or gift of the stock to him or that he or his father ever considered that any such thing was done or intended. We find no ground for any other conclusion that that reached by the chancellor.

His judgment is accordingly affirmed.

Affirmed.

TERRELL and DAVIS, J. J., concur.

WHITFIELD, C. J., and ELLIS, BROWN and BUFORD, J. J., concur specially.

ELLIS, P. J. (concurring).—The succinct but very clear statement of the controversy between the parties to this litigation, as made in the "PER CURIAM" opinion, I accept as sufficient.

The difference of opinion between the members of the Court seem to grow out of the probative force of the evidence adduced and the procedure adopted to present the questions to this Court for adjudication.

The bill filed on May 26, 1932, in the Circuit Court for Duval County was to vacate and set aside and declare null and void the decree entered by the Chancellor on May 11, 1931, "and/or that said Final Decree may be set aside, re-

versed or modified according to the equities of the parties hereto, both complainant and defendants."

The bill was filed without leave of court.

It seeks to set aside the former decree on grounds of fraud alleged to have been perpetrated by solicitors for defendants in suppressing certain information in their possession relating to an affidavit made in behalf of Robert Gamble and filed in the Internal Revenue Department in Washington which it is claimed would establish the sale of the twelve hundred and fifty shares of the capital stock of the Georgia Ice Company to Edward S. Gamble, the complainant in both cases.

The bill cannot be treated as one to review evidence or error appearing in the body of the decree, or to examine any new matter which has arisen after the decree and could not have come to light and been used at the time the decree was entered because such a bill would be in the nature of a bill of review which would require the special permit of the court. See Adler v. Superior Apartments Corporation, 119 Fla. 127, 160 South. Rep. 868; Miami Bank & Trust Co. v. Mahlstedt, 107 Fla. 282, 144 South. Rep. 659.

It is merely an original bill to impeach a decree alleged to have been obtained by fraud.

The jurisdiction of the court to set aside decrees obtained by fraud on an original bill for that purpose has long been unquestioned. Sec. 3 Ency Pl. and Prac. 608.

The character of bills such as the one filed in this case is sometimes called an original bill in the nature of a bill of review. In its essential features, however, it is an original and independent proceeding. It is a matter of right and may be filed without leave of the court, either for fraud in fact or fraud in law. 3 Ency. Pl. and Prac. 610.

The fraud in all such cases of the kind is the principal

point in issue and must be established by proof before the propriety of the decree can be investigated. Where the fraud is established the court will restore the parties to their former situation, whatever their rights may be. 3 Ency. Pl. and Prac. 611.

The question as to the character of the bill goes to the very jurisdiction of the court, because if it is merely a bill in the nature of a bill of review it may not be entertained without consent of the court expressly given for the purpose and in that proceeding the evidence theretofore received is reconsidered and argument upon it heard again. It is a mere continuation of the former proceeding, but where it is an independent case brought of right to attack a decree alleged to be procured by fraud, the burden is upon the complainant to maintain a high degree of certainty both in the matter of allegations and proof as to the fraud set up as the basis for the relief sought.

I do not agree that the Chancellor or this Court has the power to brush all such questions aside and proceed to administer what is sometimes called substantial justice according to the merits as the record discloses.

The administration of justice proceeds orderly and according to rule and when the rules are observed and accurately applied justice according to the best standard which man is capable of setting up is usually attained. When the old and age-tried standards are ignored and in place of them some judge's notion of natural or substantial justice is substituted miscarriages of human justice are more apt to occur.

The bill of complaint in the first suit sought to declare the title and ownership of twelve hundred and fifty shares of the capital stock of the Georgia Ice Company represented by certificate No. Nine, and three shares of the cap-

ital stock of the same company represented by Certificate No. Five to be in the complainant, Edward B. Gamble. The burden which was upon the complainant to establish that fact was not carried successfully, so the Chancellor decided. The complainant appealed. The appeal was dismissed without prejudice. So the decree of the Chancellor stood as rendered.

A year later the bill in the instant case was exhibited by the complainant to impeach the decree for fraud as stated.

Neither the allegations of the bill nor the evidence adduced to support it establish the existence of fraud in obtaining the decree with that degree of clearness and certainty required of causes in equity undertaking to set up fraud as the basis of relief sought. See Skinners v. Hulsey, 103 Fla. 713, 138 South. Rep. 769. Such at least was the view entertained by the chancellor from an examination of all the evidence adduced in the cause.

The question for us to determine in the cause is whether the appellant has made error in such finding clearly to appear. It is impossible to legally declare from the record that error clearly appears in the Chancellor's findings.

It is true that the affidavit of A. M. Dixon, as attorney in fact for Robert Gamble, made and filed in the Department of Revenue at Washington showed that the 1250 shares of capital stock had been transferred by R. W. Gamble to his son Edward at the date stated, but the explanation given of its subsequent transfer to Gamble Holding Corporation appears not to have been tainted with fraud. On the other hand it seems to have been in the Chancellor's view most reasonable and proper.

The lack of the elements of fraud cannot be supplied by vituperation, wordy abuse of the assumed improper conduct of opposing counsel. If it were true that Mr. Gamble

caused the shares of stock to be transferred to his son as of January, 1923, they may have been re-transferred to him or to the Gamble Holding Company because of a clearly sufficient reason, like, for instance, the inability of the transferee to ever pay for them; or, if they were transferred to avoid a debt to the United States Government, and the complainant participated in the enterprise, equity would leave the parties where it found them.

In any event it cannot be said that the defendants' solicitors perpetrated a fraud by not revealing the transaction of the first transfer of stock and the complainant's participation in it for the alleged purpose of avoiding an income tax by Robert Gamble.

The three shares of stock originally transferred to the complainant and represented by Certificate No. 5 seem to have been lost sight of by all parties and the Chancellor. The first decree held that there was only a colorable transfer of those shares to the complainant. If we were reviewing the first decree we would be constrained to hold that such transfer was a legal and sufficient one to vest the title in the complainant. They were transferred to him in order to qualify him to hold an office in the corporation that it might avail itself of his services. If such is the case it was a sufficient consideration and in equity and good conscience the same should be redelivered to him, but that point is not reviewable in this case.

I think, therefore, that the decree should be affirmed.

Brown, Buford and Davis, J. J., concur.

Whitfield, C. J., concurs specially.

Whitfield, C. J. (concurring).—The prayer of the bill of complaint is in effect that the decree in the former suit "be declared null and void * * * and/or reversed or mod-

ified according to the equities of the parties hereto." See Sections 21, 28 and 31 of 1931 Chancery Act.

The allegations and exhibits of the bill of complaint do not show fraud in not producing Exhibit No. 1 to be used as evidence in the former suit, so as to warrant an adjudication in this suit that the decree in the other suit is null and void.

Though the tendency of Exhibit No. 1 be to show a sale of 1250 shares of stock to plaintiff as claimed by him, its production in evidence in the former suit would not have required a different decree. The chancellor found that there had been a colorable transfer of the shares of stock by Robert Gamble to Edward B. Gamble.

After giving due probative weight as newly discovered evidence to Exhibit No. 1 containing a statement sworn to by A. M. Dixon, attorney in fact, that Robert Gamble did not return for taxation certain dividends on 1250 shares of stock "because of the fact that he had sold the stock on which these dividends were paid to his son, Edward B. Gamble," as well as to allegations contained in the bill of complaint with reference to Exhibit No. 1, there is ample evidence to sustain the adjudication in the former decree to the effect that though there was a colorable transfer of the 1250 shares of stock to Edward B. Gamble by Robert Gamble, the beneficial ownership of the stock was not transferred to the plaintiff below; therefore motives for such transfer of stock need not be referred to in affirming the decree of April 4, 1933, dismissing the bill of complaint herein.

BROWN and DAVIS, J. J., concur.