Esther Ruth Haffenberg and Nathan Haffenberg, Appellants, v. Jacob G. Grossberg, Appellee.

Gen. No. 41,284.

Opinion filed March 11, 1941. Opinion modified March 27, 1941.

SONNENSCHEIN, BERKSON, LAUTMANN, LEVINSON & MORSE, of Chicago, for appellants; HERBERT M. LAUTMANN, and ISAAC E. FERGUSON and JOSEPH ROSENBAUM, both of Chicago, of counsel.

FOLSOM, GROSSBERG, BRILL & MAY, of Chicago, for appellee.

MODIFIED OPINION.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Esther Ruth Haffenberg and Nathan Haffenberg appeal from an order denying them leave to file a bill, predicated upon newly discovered evidence, to review a decree of the circuit court entered July 2, 1936, adjudicating in part the issues in case No. B–126,517, entitled *Grossberg v. Haffenberg et al.*

Nathan Haffenberg and Jacob Grossberg were lawyers practicing their profession as copartners from March 1, 1917, to December 1, 1920, when the partnership was dissolved by mutual consent. Thereafter Grossberg rented space from and maintained his office with Haffenberg until the month of April 1925, under an arrangement by which Grossberg paid his expenses in part by rendering services to Haffenberg in particular cases, and until 1925 the parties apparently maintained a cordial relationship. Haffenberg testified that between 1920 and 1925, he made considerable advances to Grossberg for loans, rent and stenographic services, and rendered to him monthly an itemized statement of their account, which in 1925 showed that Grossberg was indebted to Haffenberg in excess of $7,000. Grossberg denies any indebtedness and contends that Haffenberg was indebted to him.

November 30, 1925, Grossberg filed his bill of complaint in case No. B–126,517, claiming that there had never been a final accounting of the partnership busi-

ness, and that he was entitled to additional compensation for services rendered on behalf of Haffenberg since the dissolution of the partnership which had never been properly credited to him. In addition to an accounting by Haffenberg for partnership assets and numerous items of fees, Grossberg also sought specifically to declare a trust in four parcels of real estate which had been acquired by the partnership on account of fees and to which Mrs. Haffenberg held title. Three of these parcels had been acquired by warranty deed from Emma Gerts and Oscar Gerts, her husband, in May 1918, and the fourth property, consisting of three lots on the northeast corner of Kedzie avenue and Addison street, were acquired by quitclaim deed from Claudia Hopp and Joseph Hopp, her husband, in May 1919. When Grossberg filed his bill the title to all of this real estate was held by Mrs. Haffenberg, and it was alleged, and Grossberg contended all through the proceeding, that Mrs. Haffenberg had paid no consideration for any of it; that she had acquired it through a plan on the part of Nathan Haffenberg to obtain the property for himself, without Grossberg's knowledge or consent, and with notice that it was equitably the property of the copartnership; that rents derived therefrom had been retained by the Haffenbergs, and no settlement or accounting made with Grossberg. The decree entered July 2, 1936, determined the claim with respect to the Gerts property adversely to Grossberg's contention, but sustained him as to the Hopp property by decreeing that Mrs. Haffenberg held this property in trust for the partnership. An appeal from the decree was taken to the Supreme Court, wherein Grossberg assigned cross errors as to the Gerts property, but the court (*Grossberg v. Haffenberg,* 367 Ill. 284) sustained the decree with the following comment (at pp. 285, 286):
"The Gertz property seems to have been acquired by Esther Ruth Haffenberg in 1919, for a substantial con-

sideration and the title to it, or, at least, the title opinion of the Chicago Title & Trust Company, appears, without question, to have been examined by Grossberg. It is also apparent that he represented Mrs. Haffenberg in some litigation concerning the tenancy and collection of rents thereon. No sufficient reason appears from the abstract or briefs for us to upset the considered opinion of the chancellor, and the cross-errors will therefore be overruled.''

After the issues had been made up under the original bill for accounting, the matter was referred to a master in chancery, who in January 1934, filed an interim report with respect to the four parcels of real estate, but not otherwise settling the issues between the former partners. In the hearing before the master, Grossberg testified that shortly before the dissolution of the partnership in December, 1920, he was surprised to learn that Mrs. Haffenberg had become owner of the Hopp property, and when Haffenberg explained that he had sold these lots to Mrs. Haffenberg on behalf of the partnership, Grossberg protested that he had no right to do so without consulting him. In the course of the hearing Haffenberg produced evidence tending to prove that the property had been sold to Mrs. Haffenberg for $500, with Grossberg's knowledge, and he sought to prove by entries in the partnership cashbook that Mrs. Haffenberg had made payments to the firm of $300 on September 20, 1919, and the balance of $200 on March 15, 1920. Grossberg insisted, however, that the book entries were but a ruse to cover a private transaction between Haffenberg and his wife, and that no consideration had in fact passed from Mrs. Haffenberg to the firm. An apparent weakness of the defense was that neither Haffenberg nor his wife was able to produce primary evidence of payments of $300 and $200 by Mrs. Haffenberg, and because the transaction had taken place some 13 years before the hearing, Mrs. Haffenberg was unable to say

definitely whether these payments were made by check or in currency. As a result of this uncertain state of the record, the book entries of Mrs. Haffenberg's payments were not accepted as conclusive, and because of the doubt which arose as to the authenticity of the book entries and the sufficiency of these entries to establish a sale of the firm's interest in the Hopp lots to Mrs. Haffenberg, the master and the chancellor concluded that the Haffenbergs had not met the burden imposed upon them of showing that the sale was a bona fide transaction, and the decree accordingly held adversely to their contention.

Title of the Hopp property was originally taken by the two partners in their own names, and so it remained for nearly 4 months. September 22 or 23, 1919, Grossberg prepared a deed whereby he and his wife and Haffenberg and his wife conveyed title by quitclaim deed to Harold Sternfield, Haffenberg's nephew who was then employed by the partnership as a law clerk. Haffenberg testified that the copartners desired to dispose of the property and that both of them contacted various real estate brokers in hopes of finding a purchaser, but the property was unsalable in ordinary commercial routine. Grossberg testified that the conveyance was made to Sternfield, a bachelor, so that if a purchaser were found it would facilitate the sale. The deed was made only 2 or 3 days after Mrs. Haffenberg claimed to have made the initial payment of $300, and Sternfield held title until the day after the balance of $200 was claimed to have been paid, when the property was conveyed to her by Sternfield.

The Supreme Court held that "the chancellor was right in his rulings as to the Hopp property," and commented on the transaction as follows (pp. 286, 287): "Almost immediately after Haffenberg's nephew got the title, he conveyed it to Mrs. Haffenberg without Grossberg's knowledge, and although it

is contended that Mrs. Haffenberg made some payments to the firm in return for the title, *the evidence is not clear either as to the amount, time or purpose of these payments.* The chancellor was fully justified in believing that these payments, if actually made, were inadequate and that the entire transaction was a plan to overreach Grossberg. . . . The relationship between partners is one of trust and confidence and when it appears, as it does here, that one of the partners has indirectly obtained property from the firm, he must rebut the presumption of fraud by clear and convincing evidence showing that he has acted in good faith, and has not betrayed the confidence reposed in him. (*Suchy v. Hajicek,* 364 Ill. 502; *Masterson v. Wall,* 365 id. 102.) The defendant has not denied that the property in question came to the firm for legal services. It now stands in his wife's name through the conveyance above noted. He has not met the burden imposed upon him by the rules of law above stated, and the chancellor arrived at the right conclusion.'' (Italics ours.)

The decree had ordered an accounting between the partners, and notwithstanding the admonition of the Supreme Court, in October 1937, that ''both principal parties to this suit are officers of this court and the public interest requires that they should conclude this litigation speedily,'' hearing on the accounting has never been concluded. However, in accordance with the decree, Haffenberg filed an account including the rents, issues and profits of the Hopp property, showing a balance purportedly due him.

The allegations of the petition for leave to file a bill of review with reference to the newly discovered evidence may be briefly summarized as follows: Since the institution of the suit for an accounting, associates and employees of Nathan Haffenberg have continuously and diligently searched for evidence respecting the payment of consideration and acquisition of title

to the Hopp property by Mrs. Haffenberg, and they allege that month after month they searched and examined the premises, desks, furniture, records, files, papers and documents of the firm, including personal papers, checks, bank statements and accounts, in an effort to meet the many issues in the suit, but it was not until September 5, 1939, that Joseph Rosenbaum, who was employed in Haffenberg's office, found a check in a tin box in Haffenberg's storage room of the kind and size used to contain office tools, paraphernalia and typewriter equipment, and not a box in which checks, records or documents were ever kept by Haffenberg, which was located among a heap of discarded office paraphernalia, files, books and douments under a desk in the storage room. This check for $300, dated September 20, 1919, was signed by Esther Ruth Haffenberg, and made payable to Grossberg and Haffenberg. On the back thereof appears the following indorsement: "For purchase of 1/3 interest in 3 lots corner Addison & Kedzie. Bal. 200.00 Pay Standard Trust & Savings Bank, or order. Grossberg & Haffenberg." This check cleared through the bank and, according to Haffenberg, was ultimately credited to the partnership account. on the firm's books, which also contain an entry that the balance of $200 was paid by Mrs. Haffenberg March 15, 1920. Grossberg denies that the partnership was credited with either the $300 check or the $200 that was claimed to have been paid later, and further denies that the partnership ever received any benefit from either of these alleged payments.

When the petition for leave to file the bill of review based upon the newly discovered evidence was presented to the chancellor he denied the petition and entered an order accordingly. He said that he had reached this conclusion after examining the decree and the abstract of record submitted to the Supreme Court, and pursuant to arguments of counsel and ex-

tensive citation of authorities, principally for the reason that the admission of the check and the showing of payment of the additional $200 as consideration for the Hopp property would not decisively change the findings and the decree, and because, as he observed, "the Supreme court was not so much concerned about the actual consideration, but rather with the method of acquiring title to the Hopp property by Mrs. Haffenberg, it being partnership property." After a careful examination of the record and authorities dealing with the subject, we have reached the conclusion that the court erred in denying petitioners the right to file their bill of review, for the following reasons: Grossberg had alleged, and it was his contention all through the proceedings, that no consideration was paid by Mrs. Haffenberg for the Hopp lots; that the property was conveyed to her through a private arrangement with her husband and without Grossberg's knowledge or consent, and that the conveyance violated the relationship of trust and confidence which the law imposes upon partners. It was, of course, incumbent upon Haffenberg to rebut the presumption that he had derived benefit from the transaction, by clear and convincing evidence showing that he had acted in good faith and had not betrayed the confidence reposed in him. As the case was tried the question of payment by Mrs. Haffenberg for the real estate, and the time, amount and purpose of such payment was of controlling importance, and Haffenberg's inability to produce the check may well have contributed to his failure to sustain the burden of proof cast upon him. The discovery of the check, however, furnishes additional evidence to support the contention made by the Haffenbergs all through the proceeding,—that it was a bona fide transaction. It is not merely cumulative but may be of controlling importance upon a further hearing in determining whether this was a sale of property by the partnership to Mrs. Haffenberg, or

whether it was, as Grossberg contended, part of a plan, on the part of Haffenberg, to obtain the property without paying any consideration therefor, and without Grossberg's knowledge and consent. The same contention was made by Grossberg before the chancellor with reference to the Gerts lots, but the Haffenbergs were able to satisfy the chancellor that Mrs. Haffenberg acquired the Gerts property for a substantial consideration. On appeal Grossberg conceded that Mrs. Haffenberg was entitled to be credited with the amount of her cash payments for the Gerts real estate. Her purchases of these properties were not isolated transactions. She testified that she had on other occasions made cash loans to the firm which were never repaid. It is quite probable that with the newly discovered evidence and the implications arising therefrom a convincing showing may be made on rehearing with reference to the Hopp property.

The law applicable to bills of review because of newly discovered evidence presents no serious difficulty. Where a showing is made that the newly discovered evidence is of decisive importance and not merely cumulative, leave to file the bill should be granted. (*Hupp v. McInturf,* 4 Ill. App. 449, 451; *Drawdy Inv. Co. v. Robinson,* 96 Fla. 397, 118 So. 157; *Mullong v. Mullong,* 178 Iowa 552, 159 N. W. 994; *Winfield Building & Loan Ass'n v. McMullen,* 59 Kan. 493, 53 Pac. 481.)

The showing of diligence made by petitioners is unchallenged. The loss of the canceled check, made in 1919, with no forewarning that more than 6 years later it would become the material evidence in litigation, is clearly excusable; and the circumstances of the rediscovery of the check in 1939, as narrated in the affidavit of Joseph Rosenbaum, satisfactorily explains the failure of petitioners to find the lost check before the master's hearing. There is of course no plausible reason to suppose that they would have withheld it, if it

had been available. Nor do we think that the language of the Supreme Court furnishes any serious obstacle to the conclusion we have reached. The court said that "although it is contended that Mrs. Haffenberg made some payments to the firm in return for the title, the evidence is not clear either as to the amount, time or purpose of these payments." This conclusion was entirely justifiable in view of Grossberg's contention that the entire transaction was a ruse, that no consideration passed from Mrs. Haffenberg to the firm, and the absence of satisfactory evidence of the transaction without the check as primary evidence of the payment. The further statement of the court that "the chancellor was fully justified in believing that these payments, if actually made, were inadequate and that the entire transaction was a plan to overreach Grossberg," may have been prompted by the same consideration which led the court to believe that there was no satisfactory showing as to the payments, the amount, purpose or the time thereof. Grossberg's principal contention has been that no consideration passed from Mrs. Haffenberg, and in the alternative he has insisted that if any money was paid, it was for her husband's benefit and not the firm's, and that he had no knowledge of any payments. On the pleadings and the case made by Grossberg, the Haffenbergs had no occasion to introduce direct evidence of the value of the property on September 20, 1919, but in explanation of the circumstances under which Mrs. Haffenberg became a buyer of this property, Haffenberg testified that the copartners tried to dispose of the lots through the ordinary routine, but were unable to do so; that in May 1919, Joseph Hopp made an offer to Patrick K. Redmond to sell him 20 lots in this subdivision for $10,000, which was not accepted; and that later in settlement negotiations with Fred A. Bangs, attorney for various creditors of Joseph Hopp, Grossberg and Haffenberg first submitted the 50 lots subject to a

$2,500 mortgage, and later the 3 lots which were not then mortgaged; that upon investigation of the 50 lots, Bangs answered that if his clients took them, they would be taking a "gold brick" for their payments; that Bangs said he found the corner lots at Addison and Troy and Troy and Eddy streets to be worth probably $750 each, and the inside lots not to exceed $400; and that Bangs rejected the offer of the 3 lots in question and accepted instead a cash offer of $2,000. Grossberg presents a different theory as to the value of these lots. He contends that Haffenberg had negotiated a loan on them of $2,500, indicating that they were probably worth $5,000, and that "in a few years that property brought in $12,530.64 in accumulated rents," and that the $2,000 payment to Bangs was made from the $2,500 loan on the property. However, none of this evidence was introduced on the question of the adequacy of the sales price of the lots to Mrs. Haffenberg; it was not contended that the price was inadequate, but rather that the sale was a ruse on the part of the Haffenbergs, and that if made it was for Haffenberg's sole benefit and in order to enable him to pay his debts.

In examining the decisions wherein leave to file a bill of review upon newly discovered evidence was considered we find that the courts frequently raise the inquiry whether the newly discovered evidence would probably produce a different result, "and one more beneficial to plaintiff than the original decree." (21 C. J. 756, et seq.) In *Drawdy Inv. Co. v. Robinson, supra,* the circumstances were strikingly similar to the case at bar. The defendant there claimed a credit for $5,600 on account of a mortgage indebtedness, which the chancellor denied, and on appeal to the Supreme Court the decree was affirmed. Subsequently, the defendant discovered the canceled check for $5,600, with markings indicating that payment of the check had been received by complainant. Nevertheless, the chancellor denied defendant's petition for leave to file a

bill of review, but on appeal the Supreme Court reversed the order. It was pointed out that the check became material because when the testimony was taken in the original suit defendant could not produce the check; that complainant claimed he had never received a check for $5,600, notwithstanding evidence introduced by Drawdy through several witnesses who testified that they saw the check delivered and remembered that plaintiff had made a memorandum of the credit; and that Drawdy's failure to produce the original check had caused the chancellor to discredit his evidence in this regard and to believe plaintiff's statement that he had not received that payment. The court called attention to the fact that as a matter of common experience an important paper becomes misplaced and is frequently discovered, after having been long given up as lost, in places where the owner's hands and eyes frequently must have passed over it many times. In conclusion, the court observed that "had this check been introduced at the hearing before the final decree, it is morally certain that in that decree the defendant in that suit would have had credit for the $5,600, and that to require the performance of the decree as it was entered is to require the defendant to pay this amount of money the second time, which is not in accordance with our views of equity and good conscience." This decision, and others hereinbefore cited, express the current weight of authority on the right of a defeated party to review a decree because of newly discovered evidence, and is applicable to the proceedings in the case at bar.

In determining the issues presented by this appeal it is not necessary for us to pass upon the weight of the evidence or the credibility of witnesses. The testimony is sharply conflicting on most questions and we do not intend by anything we have said to indicate how the controverted issues of fact should be determined. We are of opinion, however, that the newly discovered

evidence is of such character as to entitle petitioners to a review of the decree entered.

During the pendency of this appeal Grossberg filed motions to strike the report of proceedings from the record, also to strike certain pages from the record, and to affirm the order appealed from. All these motions were reserved to hearing and are now denied.

For the reasons herein stated, we are of opinion that the order of the circuit court should be reversed and the cause remanded with directions that petitioners be granted leave to file their complaint for review, and that further proceedings be had, not inconsistent with the views herein expressed.

*Order reversed and cause remanded with directions.*

SCANLAN and JOHN J. SULLIVAN, JJ., concur.