PEARSON, Judge.
The single point presented on this appeal is as follows: “Whether the children of a decedent have legal standing to collaterally attack the validity of a divorce decree dissolving the prior marriage of decedent’s wife and her prior husband.” [1]
The appeal is from an order of the County Judge’s Court denying appellant’s petition for letters of administration. The appellant, Joan Kant, filed a petition for letters of administration with respect to the estate of Seymour J. Kant, deceased. This petition alleged that Seymour Kant died intestate and left surviving him his wife, Joan Kant, and three children Jon R. Kant, Samra L. Kant, and Terry A. Kant, all minors. The three children were the progeny of a prior marriage to Ann Eileen Kant. The petition also set forth that Seymour Kant’s marriage to Ann Eileen Kant ended in divorce, following which Seymour Kant married Joan Kant. Appellant, Joan Kant, prayed that she be appointed as administratrix of the estate.
Ann Eileen Kant, individually, and as natural guardian of Jon R. Kant, Samra L. Kant and Terry A. Kant, and Jon R. Kant, Samra L. Kant and Terry A. Kant as lineal descendants of Seymour Kant, filed an amended answer to the petition for letters of administration. In effect, the answer denied that Joan was the widow of the deceased. Ann alleged that prior to Joan’s “alleged, purported, pretended and supposed marriage to said Seymour J. Kant, on September 14, 1966, under the name of Joan L. Sauve de la Platte,” Joan “was the wife of one John DeBlase.” Ann further alleged that Joan was not divorced from John DeBlase because “in fact no suit, action or proceeding for a divorce was ever instituted by said John DeBlase in said Civil Court of Tlaxcala, Judicial District of Hidalgo”, in the State of Tlaxcala, Mexico, and that the purported judgment of the Mexican court which the petitioner claimed had dissolved her marriage to said John DeBlase “was never rendered.”
The cause proceeded to trial before the county judge upon the petition and the amended answer. After trial, the county judge entered his judgment denying the petition for letters of administration. He found as a matter of fact:
“. . . that Petitioner, JOAN KANT, was not the surviving spouse of SEYMOUR J. KANT, Deceased, and is not entitled to Letters of Administration upon the estate of said SEYMOUR J. KANT, Deceased, and her said petition should be denied. ...”
On this appeal, appellant urges that a stranger to a judgment of divorce can impeach such a judgment only when the judgment is attempted to be enforced so as *526 to affect rights or interests acquired prior to its rendition. It is argued that the decedent’s minor children were strangers to the divorce between Joan and John DeBlase, and that at the time of the divorce these children had no interest in the matter, and that therefore their rights as heirs to their father’s estate do not entitle them to attack the validity of the divorce. Appellant’s primary reliance is upon a holding of the Supreme Court of Florida that the second spouse, as a stranger having no status or rights at the time of the divorce which could have been affected by the divorce, has no standing to impeach the decree. Gaylord v. Gaylord, Fla.1950, 45 So.2d 507; deMarigny v. deMarigny, Fla.1949, 43 So.2d 442. See also the opinion of this court in Coltun v. Coltun, Fla.App.1964, 167 So.2d 336, which held that a second husband has no standing to contest his wife’s previous decree of divorce from a prior husband which was not void on its face.
The appellee urges that the exact point presented has been determined in a holding by the Supreme Court of Florida in State ex rel. Willys v. Chillingworth, 124 Fla. 274, 168 So. 249 (1936). In that case, Virginia Willys De Landa, the daughter of John N. Willys, deceased, filed suit in the Circuit Court of Palm Beach County, Florida, seeking to declare invalid the marriage of her father to Florence E. Dolan. She alleged that the divorce of Florence E. Do-lan from her prior husband, Plarold J. Do-lan, in Dade County before her marriage to Mr. Willys, was null and void. The daughter alleged that the divorce "... did not dissolve the bonds of matrimony between the parties”, and that therefore Florence E. Dolan Willys could not have contracted a valid marriage with the deceased. The Supreme Court, upon the suggestion of the putative widow, Florence E. Dolan Willys, granted a writ of prohibition on the ground that such an action would have to be brought in the Circuit Court of Dade County. In deciding whether the action could be brought at all the Supreme Court stated:
* * * * * *
“The rule is settled in this state that respondent, being heir to her father’s estate, has a right to question the validity of his marriage to petitioner. Rawlins v. Rawlins and Kuehmsted v. Turnwall [103 Fla. 1180, 138 So. 775], supra.
“The validity of the marriage of John N. Willys to Florence E. Dolan Willys is determined by the validity of the divorce decree in Dolan v. Dolan which was entered in Dade county October 25, 1933. The bill challenging the validity of the decree in Dolan v. Dolan was filed February 7, 1936, in Palm Beach county, less than three years after said decree was entered. The circuit courts of Dade and Palm Beach counties are courts of co-ordinate jurisdiction, and the decree in Do-lan v. Dolan appears to be the real gravamen of this litigation.”
í}í % ifc
“In view of the fact that the final decree in Dolan v. Dolan was not appealed from, that courts of chancery have inherent power to correct their decrees, that it was predicated on intrinsic fraud, and is the real gravamen in this litigation, this court has reached the conclusion that the orderly administration of justice would be best served by giving the circuit court of Dade county the opportunity to correct its decree if it was fraudulently obtained.”
* * * * * *
The United States Supreme Court was called upon to decide whether the holding in the Willys case established the law in Florida to be that a child could attack the validity of her father’s divorce in order to demonstrate that a second marriage was invalid. The Court found that the holding in deMarigny v. deMarigny, supra, was controlling. In Johnson v. Muelberger, 1951, 340 U.S. 581, 71 S.Ct. 474, 95 L.Ed. 552, the Court stated:
% * * * * *
“No Florida case has come to our attention holding that a child may contest *527 in Florida its parent’s divorce where the parent was barred from contesting, as here, by res judicata. State ex rel. Willys v. Chillingworth, 124 Fla. 274, 168 So. 249, on which the Court of Appeals of New York relied, does not so hold.”
* jjs * * *
“In deMarigny v. deMarigny, Fla., 43 So.2d 442, a second wife sought to have the divorce decree of the first marriage declared invalid. The Supreme Court of Florida held that the putative wife, being a stranger, without then existing interest, to the divorce decree, could not impeach it.”
* * * * * *
“We conclude that Florida would not permit Mrs. Muelberger to attack the Florida decree of divorce between her father and his second wife as beyond the jurisdiction of the rendering court.”
* * * * * *
A careful reading of the opinion of the Supreme Court of Florida in the de-Marigny case demonstrates that the decision was based on a statement quoted from 1 Freeman on Judgments (5th ed. 1925) § 319, at 636, which was included in the text of deMarigny as follows:
***** *
“As aforestated, the appellant-petitioner was neither defrauded nor injured for she occupied no status and had no rights at the time of the entry of the divorce decree sought to be invalidated which were or could have been affected thereby. The law on this subject is as stated in Freeman on Judgments, Vol. 1, page 636, Section 319: ‘It must not, however, be understood that all strangers are entitled to impeach a judgment. It is only those strangers who, if the judgment were given full credit and effect would be prejudiced in regard to some preexisting right, that are permitted to impeach the judgment. Being neither parties to the action, nor entitled to manage the cause, nor appeal from the judgment, they are by law allowed to impeach it whenever it is attempted to he enforced against them so as to affect rights or interests acquired prior to its rendition.’ ” [Emphasis theirs]
******
The opinion in Gaylord v. Gaylord, supra, follows deMarigny and reiterates the quotation from Freeman on Judgments.
The rule of law illustrated in the above cases appears to be well established in many jurisdictions. See cases collected at 49 C.J.S. Judgments § 414. However, its application to the present situation is not so clear. In the present instance, the only theory upon which the trial judge could have held that the appellant, Joan Kant, was not the widow of Seymour Kant, has to be grounded on the evidence appellees offered to demonstrate that no suit to procure the purported divorce was initiated in the Mexican court where the purported divorce was granted because no complaint was ever presented or actually litigated in that court. This theory assumes that no cause of action was ever filed in the Mexican court, and therefore renders moot the question of the existence of a judgment valid on its face.
When we turn to 1 Freeman on Judgments (5th ed. 1925) § 338, at 678-79, we find the following discussion of situations similar to the one which is now presented to us:
******
“A court has no power to render judgment in favor of one as plaintiff if he has never commenced any action or proceeding calling for its action, nor has it, as a general rule, power to give judgment respecting a matter not submitted to it for decision, though such judgment is pronounced in an action involving other matters which have been submitted to it for decision and over which it has jurisdiction. There must be some appropriate application invoking the judicial power of the court in respect to the matter sought to be litigated; such as the filing of a petition, complaint or other *528 proper pleading, for it is in this manner that the court’s power over the subject matter is invoked.”
sj: s}c ‡ tfc ‡ ^
“On the other hand, an entire failure to invoke the court’s jurisdiction over the subject matter or an attempt to do so in a manner wholly inadequate to bring the court’s powers into activity would prevent any valid determination of the case.” [Emphasis supplied]
******
These comments are supported by an opinion of the Supreme Court of South Dakota, which opinion, we believe, is in point upon the present question. In re Jacobson’s Will, 44 S.D. 409, 184 N.W. 237 (1921). The South Dakota court was presented with a petition to probate a will. The circuit court admitted the will to probate. On appeal, the only objection to the will was the alleged testamentary incapacity of the deceased. In this connection, the existence of a petition for appointment of a guardian, which later resulted in an order establishing mental incompetency, was in question. The court held as follows:
* * * * * *
“It is also the settled law that the decision of a court not having jurisdiction, being void, may be attacked in any proceeding in which a person seeks to assert a right under such pretended adjudication; it may be attacked in any suit in which its validity is drawn in question.”
* * * * * *
“ . . . there was evidence, negative in its nature, but based upon the records, or rather lack of records, sufficient to warrant the trial judge in finding as a fact, and we must presume he did find, that no petition was ever filed. Such evidence was competent and was properly received.” [Emphasis supplied]
* * * * * *
We think this reasoning is controlling in the present case.
We are asked to reverse a finding of fact made by the trial judge upon the premise that the trial judge erroneously failed to apply existing law to the facts revealed by the record. We think that the appellant has failed to establish that premise. We accept as stated the principle established in Florida that a stranger to a judgment of divorce can impeach such a judgment only when the judgment is attempted to be enforced so as to affect rights or interests acquired prior to its rendition. But this holding did not preclude the children from showing in the trial court that the person claiming to be their father’s widow was not in fact his widow. It is an elementary principle of law that a judgment cannot be rendered unless the court’s jurisdiction is invoked by the commencement of an action or proceeding before the court. See 49 C.J.S. Judgments § 18. The gist of appellees’ defense was an assertion that a copy of the purported decree offered to prove the divorce was in fact a forgery. In other words, appellees argue that the record supports a finding by the trial judge (although not explicitly made) that the evidence offered as to appellant’s widowhood was in fact false because it was not what it was purported to be. We find that there is evidence in the record to support such a finding. A fraud upon the court may be proven in a subsequent proceeding. Crosby v. Burleson, 142 Fla. 443, 195 So. 202, 207 (1940). See Beidler v. Beidler, Fla.1949, 43,Sp.2d 329; State ex rel. Warren v. City of Miami, 153 Fla. 644, 15 So.2d 449 (1943); State ex rel. Fulton Bag & Cotton Mills v. Burnside, 153 Fla. 599, 15 So.2d 324 (1943); State ex rel. Willys v. Chillingworth, 124 Fla. 274, 168 So. 249 (1936); Gamble v. Gamble Holding Corporation, 120 Fla. 340, 162 So. 886 (1935); Ryan’s Furniture Exchange, Inc. v. McNair, 120 Fla. 109, 162 So. 483 (1935); Sawyer v. Gustason, 96 Fla. 6, 118 So. 57 (1928); Shrader v. Shrader, 36 Fla. 502, 18 So. 672 (1895); Rawlins v. Rawlins, 18 Fla. 345 (1881); Webb v. Gregory, Fla.App.1958, 105 So.2d *529 183. We are influenced to sustain this view of the law by our conclusion that a contrary holding would amount to an es-toppel against the appellees to show facts which they perceived, and the trial court found to be, an attempt to perpetrate a fraud. Such an estoppel would be inequitable. It would act to bar the disclosure of fraud. The policy of the courts is not to protect the perpetrators of a fraud, but to allow the exposure of fraud wherever it is clearly proven. See State ex rel. Willys v. Chillingworth, supra; Shrader v. Shrader, supra; Rawlins v. Rawlins, supra.
We therefore affirm the final order appealed.
Affirmed.

. The appellee has restated the point in a more argumentative fashion. We quote it at this point so that a more complete understanding of the positions of the respective parties may be presented :
“Where the testimony of a Mexican attorney, a former judge, and lecturer on Mexican law, shows that according to the law of Mexico and the State of Tlax-eala, a proceeding to obtain a divorce is a civil proceeding, of which only the civil court has jurisdiction, and that in 1965 there was no law in effect which authorized the governor or any administrative department of the government to grant a divorce; and where the evidence showed that no suit to procure the purported divorce was initiated, commenced or filed in the Civil Court of Tlaxcala, Judicial District of Hidalgo, State of Tlaxcala, and that no demand or complaint was ever presented to that court or processed in that court, and there was no evidence that either party ever resided in Mexico or even went to Mexico, under those circumstances, did said purported judgment have any legal existence in law or fact, as a divorce decree?”